M. UNDERWOOD, Appellee, v. OSKALOOSA TRACTION AND LIGHT CO., Appellant.

**Automobile accident:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. The evidence in this action is reviewed and held to show that plaintiff, the driver of an automobile which collided with a street car, was conclusively negligent in approaching the crossing, and that a verdict should have been directed for defendant.

**Same:** LAST CLEAR CHANCE: SUBMISSION OF ISSUE. Where an automobile accident was clearly the result of the driver's negligence, and he was in no apparent peril up to the very moment of collision with a street car, when the accident was unavoidable, and there was no evidence that the motorman knew that plaintiff's attention was diverted, there was no basis for submission of the action on the theory of the last clear chance.

**Appeal:** RESERVATION OF EXCEPTIONS: MOTION FOR NEW TRIAL. Where defendant moved for a directed verdict at the close of plaintiff's evidence, and again at the close of all the evidence, and requested several instructions asking for a directed verdict because of insufficiency of the evidence, saving proper exceptions to the court's adverse rulings, the sufficiency of the evidence was reviewable on appeal although no motion for a new trial was made.

*Appeal from Mahaska District Court.*—HON. JOHN F.
TALBOTT, Judge.

WEDNESDAY, OCTOBER 16, 1912.

ACTION for damages resulting from a collision of plaintiff's automobile with one of defendant's street cars. There was a verdict for the plaintiff for $108, and the defendant appeals.—*Reversed.*

*John F. & Wm. R. Lacey,* for appellant.

*McCoy & McCoy* and *S. V. Reynolds,* for appellee.

EVANS, J.—The accident in question occurred on September 6, 1910, at 4 p. m. on one of the principal business streets of Oskaloosa, known as High avenue. This avenue extends east and west, and the street cars are operated upon it. The plaintiff in his automobile approached the avenue at right angles over C street. High avenue is eighty feet wide, and the street car track is laid upon its center line. C street is sixty-six feet wide. The structures on C street prevented a view east or west on High avenue, except upon near approach to its crossing. Arriving at the C street crossing on the north line of High avenue, there was nothing at the time of the accident to obstruct a clear view of High avenue either east or west. The street car in question was coming from the west. The collision resulted from the failure of the plaintiff to observe the street car. He so failed because his attention was directed in another direction, and he was looking backward, instead of forward. The petition charged various specifications of negligence on the part of the defendant, viz., that the car was operated at a reckless rate of speed; that no gong or bell was sounded; that the motorman was old and incompetent; that the car and its equipments were old and out

of repair; that the motorman was negligent in failing to stop the car after discovering the peril of plaintiff, and in failing to discover such peril in time to stop the car. The trial court withdrew the specifications in relation to the competency of the motorman and the condition of the car. The other specifications were submitted to the jury.

It is the contention of appellant that the evidence did not warrant a submission of the case to the jury at all, and that a verdict should have been directed for the defendant. We give our first attention to this question. The plaintiff testified as follows:

I was running south on C street when I came to within about sixty feet of the north line of West High avenue. I saw a man on the crossing going east. When I first noticed him, he was directly in front of me. I called out to him to call his attention so he could see I was coming. Instead of quickening his speed, he rather slowed up. I went past him, and, as I passed, I turned and looked over my left shoulder, but he still kept moving on, but seemed to be muttering something. As I drove by him, I had slowed up considerably, so that he would have time to get out of my way. His peculiar actions drew my attention to him, and, when I turned my eyes in front, I was right on the street car line, and the street car was very close to me. I did not have time to quicken my speed, and it was too late to shut down. I had heard no gong or bell sounding. If I had heard a bell, I would have turned to the east or west; or stopped my car. I could have turned either east or west. I could have stopped easier than anything else, as I was running slow. I was running about ten miles an hour. I had been looking towards High avenue until this man attracted my attention. When I first saw the street car, it was right close to me, and my front wheels were close to, if not on the street car line. The street car was virtually on me when I first saw it. I had a clear track in going into High street. I was going south on C street, which crosses High. When I first saw the fellow in my way, he was fifty or sixty feet from me. He was coming east down the High street sidewalk. He was

*1. AUTOMOBILE ACCIDENT: contributory negligence: evidence.*

going east on High street. He was in the crossing when I first noticed him, and I was then running about ten miles an hour. He turned and commenced to talk. I could see from the way his mouth worked and his peculiar actions that he was not pleased. I understood from his muttering that he was not pleased with my actions. When he started in front of me, I slowed up and gave the alarm. I supposed he would quicken his speed, but he slowed up, and I slowed up and probably down to eight miles an hour. If it had not been for the trouble with this man, I would have seen the car, but he was making a disturbance and attracted my attention. He followed me down after the accident. I rather think he was drunk. He caused me to slow up. His action caused me to look at him, rather than to see whether the street was clear or not. If I had seen the car, I probably would have stopped, or I could have turned either east or west and missed it. This drunken man attracted my attention until it was too late for me to turn. When I got through with him, the car was right on me.

Plaintiff's witness Parks testified on cross-examination as follows:

There was nothing to obstruct the view of anybody in the auto from seeing or anybody from seeing the auto; nothing to obstruct the view of the street car; nothing to prevent Underwood from turning to east or west in the street if he had been looking. He may have been looking at this man. They came together quick, and it was all done. Underwood could have turned either to the right or left. I do not remember hearing the gong sounded. There was nothing to attract my attention either to the street car or the auto. I saw the car going east and the auto going south. The auto did not turn either right or left, but ran straight at the car. I think the car hit it. Both of the heads came together. The southwest corner of Underwood's machine struck the northeast corner of the car. The fender was knocked to one side.

Plaintiff's witness Dobbyns testified as follows:

I think the car was running seven or eight miles an hour. Underwood was coming at a fair gait. The street

car was running faster than Underwood. ` The motorman did nothing, that I noticed, to slacken the speed of the car. There was no obstruction west of C street to obstruct the view from the platform of the car.

Other witnesses testified for the plaintiff in substantial consistency with the foregoing. There was no evidence of any reckless or undue rate of speed on the part of the street car, nor evidence of any other negligence, except the alleged failure to sound the gong or bell..

It is undisputed that the plaintiff could not have failed to see the approaching street car if he had kept his face to the front instead of to the rear. His car was under control. He had a space of forty feet after entering High street to turn either to the east or west. There was no excuse for his looking over his left shoulder except the merest curiosity. He was confronted with no emergency, real or apparent, which caused him to do an act so reckless. The case presented is one of simple and conclusive negligence on the part of the plaintiff.

The appellee contends that he was entitled to recover on the theory of "last clear chance." This theory was submitted to the jury by the instructions of the court, and a recovery permitted thereunder. There is 2. SAME: last clear chance: submission of issue. no claim of evidence that the motorman actually discovered the peril of the plaintiff, but it is contended that he was in a position wherein he ought to have discovered it. The question was submitted to the jury in this form. The plaintiff was in control of his automobile. It is conceded that he could have turned to east or west or could have stopped. He was in no apparent peril up to a mere moment before the actual collision. It is not claimed that the motorman knew that plaintiff's attention was directed away from his duty. The trial court properly instructed, in substance, that the motorman had a right to presume that the plaintiff would turn east or west or stop until the contrary was apparent. Nothing to

the contrary was apparent until the automobile was within ten or fifteen feet of the track, when the collision was confessedly unavoidable. There was no basis in the evidence for the application of the "last clear chance" theory. The incongruity of its attempted application is illustrated by another feature of the case. The street car was also damaged in the collision, and a counterclaim was filed to recover such damages from the plaintiff. Now if the defendant could be made liable to the plaintiff notwithstanding plaintiff's negligence on the theory that the defendant's motorman, by exercise of reasonable diligence, ought to have discovered the plaintiff's negligence and peril, as set forth in the instructions to the jury, then, upon the same reasoning, appellant contends that the plaintiff should be held liable to the defendant for its damages because by the exercise of ordinary diligence he also could have discovered the defendant's peril. The logic is quite compelling, and would result in holding each party liable to the other for the respective damages sustained. It is sufficient to say that the plaintiff was not entitled to recovery on the "last clear chance" theory, and that a verdict for the defendant ought to have been directed on the ground that the negligence of the plaintiff clearly contributed to, if it did not exclusively cause, his injury.

II.   It is urged by the appellee that the defendant is not in a position to urge the insufficiency of evidence to support the verdict. The ground of such contention is that the defendant filed a motion at the close of the plaintiff's evidence; that this motion was overruled; that the defendant thereupon introduced testimony in its own behalf. It is urged that the defendant thereby waived the ruling on the motion, and that it did not file any motion for a new trial. The contention is based upon *Schulte v. Ry. Co.*, 124 Iowa, 194, and *Hanson v. Kline*, 136 Iowa, 108.

3. APPEAL: reservation of exceptions: motion for new trial.

But counsel for appellee overlook the rest of the record.

Not only did appellant file a motion for a directed verdict at the close of plaintiff's evidence, but it renewed the motion at the close of all the evidence. It also submitted to the trial court twenty requested instructions, several of which asked for a directed verdict because of insufficiency of evidence. Exceptions to the adverse rulings of the trial court were properly saved. The appellant did not lose the benefit of these exceptions by failing to file a motion for a new trial. Code, section 4106.

The judgment entered below must therefore be— *Reversed.*