DELAWARE, L. & W. R. CO. v. DONAHUE.

(Circuit Court of Appeals, Second Circuit. December 13, 1916.)

No. 101.

1. CARRIERS ⊂⇒284(2)—CARRIAGE OF PASSENGERS—DECREE OF COURT—MALICIOUS ACTS.

While carriers of passengers are bound to exercise due care, from ordinary to the highest possible degree according to circumstances, they are not held to the highest degree of care to provide against malicious or criminal interference with their apparatus by strangers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1128–1130, 1132, 1134, 1135, 1173; Dec. Dig. ⊂⇒284(2).]

2. CARRIERS ⊂⇒320(22)—INJURIES TO PASSENGER—EVIDENCE—NEGLIGENCE.

Where a witness for the carrier testified that he opened a switch and set the lamp so that it showed safety, which testimony, if standing alone, would require a directed verdict for defendant in an action by a passenger for injuries resulting from the derailing of the train at the switch, but a witness for plaintiff testified that he examined the switch lamp immediately after the accident and found it was not burning, the court was justified in submitting the issue of the carrier's negligence to jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1318; Dec. Dig. ⊂⇒320(22).]

3. CARRIERS ⊂⇒320(22)—CARRIAGE OF PASSENGERS—QUESTION FOR JURY—USE OF SWITCH.

In an action for injuries to a passenger caused by the derailing of a train at an open switch which defendant claimed was opened maliciously, where there was evidence of the existence of a switch stand which automatically signaled if it was interfered with, but no testimony that such a stand was in use on branch lines similar to one on which the accident occurred, while defendant called expert witnesses to testify to the contrary, it was error to submit to the jury the question whether it was negligence for the carrier not to use such a stand, since such issue was one for railroad experts, not one which the ordinary juror was competent to determine from his own knowledge or experience.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1318; Dec. Dig. ⊂⇒320(22).]

In Error to the District Court of the United States for Southern District of New York.

Action by Elsie Donahue, an infant, by Thomas Donahue, her guardian ad litem, against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

F. W. Thomson and W. S. Jenney, both of New York City, for plaintiff in error.

Edward J. McCrossin, of New York City, for defendant in error.

Before COXE, WARD, and HOUGH, Circuit Judges.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. This is an action by a passenger to recover damages for personal injuries resulting from the defendant's train running off the main track on an open switch to a siding, where it was derailed and wrecked. The accident happened October 17, 1914, about 5:50 p. m., on the Syracuse Division of the defendant's road, where there was but a single track over which there was comparatively little traffic. Both the engineer and fireman were killed, so that no testimony could be obtained from them. The jury gave a verdict for $10,000 for the plaintiff, to the judgment entered on which this writ of error is taken.

The apparatus controlling the switch in question was as follows: There was a vertical standard on the side of the track the lower end of which rested in a lock cavity, where it was held by a spring. The standard could not be turned until it had been lifted out of the cavity against the pressure of this spring by a foot lever. On the standard was a target consisting of two metal shields at right angles to each other, both sides of one being painted white, the safety signal, and of the other red, the danger signal. Above this target was an oil lamp with four glass eyes, two showing green for safety, corresponding with the white blades of the target, and two red for danger, corresponding with the red blades of the target. The standard after being lifted from the foot lock could be turned one-quarter of a circle by another lever; the effect being to change the color of the blades and of the lamp from safety to danger, or vice versa, showing up and down the track.

In addition to this, there was also at the side of the track a bolt lock operated by a lever which clamped the switch point tightly to the main rail when the switch was closed.

Both the lever on the switch stand and the lever on the bolt lock were kept immovable by padlocks, so that the switch could not be changed until both locks had been opened. There is a stretch of straight level track of over half a mile on each side of the switch. In order to open the switch, if it is closed, the padlocks must be unlocked, then the bolt lock lever must push the clamp out from the switch point, then the standard of the switch stand must be raised out of the foot lock by the foot lever, then the standard must be turned one-quarter of a circle by the other lever, and finally dropped back again into the foot lock.

The defense is that an insane boy, out of a desire to revenge himself on a brakeman who had put him off a train, broke both padlocks, opened the switch, and changed the lamp so as to show the safety color green up and down the track. This boy Campbell, who had been convicted of murder in the first degree and afterwards committed to the New York Asylum for Insane Criminals, was called by the defendant and testified that he did all these things and changed the lamp so that, although the switch was open, it showed the safety signal up and down the main track.

The plaintiff's witness Casey testified that he examined the lamp immediately after the accident and found that it was not burning.

[1] Although carriers of passengers are bound to exercise care from ordinary to the highest possible degree, according to circumstances, they are not held to the highest degree of care to provide against mali-

cious or criminal interference with their apparatus by strangers. Fredericks v. Northern Central R. Co., 157 Pa. St. 103, 27 Atl. 689, 22 L. R. A. 306.

[2] If Campbell's explanation of the accident had been the only one in the case, a verdict should have been directed for the defendant. Casey's testimony, however, raised a question of the defendant's negligence which justified the court in submitting the case to the jury. However, we think exceptions were taken to the charge which require a new trial.

[3] The plaintiff offered proof that there is a standard switch stand which, as soon as the switch is touched, gives an additional electric automatic caution signal at a point some distance beyond the switch itself; for instance, if there were a block system on the road, into the next block. This testimony could only be made relevant or material if followed by proof that such a switch was commonly used by railroad companies on similar stretches of track in similar country with similar traffic. No such proof was offered by the plaintiff, and the defendant called witnesses to the contrary.

The court charged:

"The plaintiff says the defendant should have had a block system; that such a system would have lessened the chances of tampering with signals so as to leave a green light showing north and south when the switch was open. If that is so, you are to consider whether such a block system was reasonably necessary in the exercise of the care required.

"You are to remember that this was a single-track road, that the switch used was a standard switch, that many of the switches in the country do not have caution lights ahead and are not a part of a block system, and it is expensive to install them. It may not be reasonable or possible to install such a system on a small branch road, nor possible or reasonable to put in such systems everywhere at once. In view of the size of the traffic of the branch road, the expense of all the conditions, it is for you to determine whether it was negligence on the part of the defendant not to have installed a different switch, or whether, if one had been installed, it would have prevented the derailing of the train by Campbell, if you find he did it. If you find he derailed the train and the switch installed was a proper one, under all the circumstances, or even if not a proper one, that the presence of the caution light would not have prevented the injury, then you are to find for the defendant. If, on the other hand, you find that the defendant should have installed, in the exercise of proper care, a caution signal, and that had it done so it would have prevented the injury, then you must find for the plaintiff, if you find that the plaintiff was injured."

The defendant excepted to the submission of these questions to the jury. Whether an additional automatic distance signal should have been installed by the defendant was a question for railroad experts. It was not a subject which the ordinary juror was competent to determine from his own knowledge or experience. It would be easy for a jury in every case to conceive of something that might have been done to make the situation safer. But the measure of the railroad company's duty is good railroad practice, and not any and every precaution which a jury may think would have prevented the accident. All the testimony on the subject being that on such a track as the one in question it was not customary to use this additional distance signal, the question wheth-

er or not the defendant was negligent in not using it should not have been submitted to the jury. New York Central R. Co. v. Banker, 224 Fed. 351, 355, 140 C. C. A. 37.

The judgment is reversed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes