BESSIE WALTERS, Appellant, v. DES MOINES CITY RAILWAY COMPANY, Appellee.

**CARRIERS: Movement of Cars While Passenger is Alighting.** Any
1   movement of the cars of a common carrier, *after the passenger has been invited to alight, and before he has had reasonable opportunity to do so,* may constitute negligence, whether such movement be *unusual* or *unnecessary* or not. So held where a passenger, immediately upon the stopping of the car and the opening of the door, turned from her position *within the car,* to alight, and was, without warning, at once thrown to the floor by the sudden restarting and restopping of the car.

**NEGLIGENCE: Res Ipsa Loquitur.** Proof that a passenger, on being
2   invited to alight at the end of her journey, turned from her position within the car, to alight, and was immediately thrown to the floor and injured, does not create a *presumption* of negligence on the part of the carrier.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

NOVEMBER 20, 1920.

REHEARING DENIED MARCH 17, 1921.

ACTION for damages consequent on a fall as plaintiff was about to alight from a street car, resulted in a directed verdict for defendant, and judgment thereon.   Plaintiff appeals.— *Reversed.*

*H. S. Thomas* and *H. S. Stephens,* for appellant.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

LADD, J.—At the conclusion of plaintiff's evidence, the court, on motion, directed the jury to return a verdict for defendant, on the ground of insufficiency.   Counsel for appellant

1. CARRIERS: movement of cars while passenger is alighting.

contend that it was sufficient to carry any of three allegations of negligence to the jury: (1) That the car on which plaintiff was riding was started while she was engaged in attempting to alight; (2) that, in starting and operating the car, defendant was negligent; and (3) that an inference of negligence arose from the facts shown.

One of defendant's street car lines extends along Ingersoll Avenue.   This avenue is intersected by Twenty-third Street. The plaintiff, a resident of Clarinda, had been visiting Mrs. Nichols, who resided on Twenty-third Street, to the north of Ingersoll Avenue, several days.   At about 9:30 o'clock in the evening of July 16, 1918, they, having attended a picture show, boarded an Ingersoll Avenue car at Eighth and Walnut Streets, Mrs. Nichols paying the fares, and, as the seats were all taken, they stood near the railing about the conductor.   Mrs. Nichols testified that she stopped "right where the conductor stands, taking hold of the rod, and Mrs. Walters was in front of me. She turned around facing me, and we stand there talking.   The car was an old type car, open at the rear, the conductor at the rear of the car with a stand, and you walked behind him and step up into the main body of the car.   There was a little railing, ordinary gas pipe, around the conductor, about waist high.   I took hold of this railing with my right hand.   Mrs. Walters was

facing me, and had a hold with her left hand.  *  *  *  We were standing on this side of the conductor, and I think he was facing the door.  Conductor between us and the rear of the car. We were closer than two feet to the conductor.  Neither of us had anything in our hands.  The conductor called out the streets in order, and when he said 'Twenty-third Street,' I waited a few minutes, and said, 'Twenty-third Street.'  He said, 'All right,' and he stood there.  The car slowed down, and came to a dead standstill.  *  *  *  I let go of the rod and started.  Mrs. Walters leaned towards me, and I said, 'The other way, Bess;' and she was standing about this, and started to turn, and just then the car started forward, and she grabbed the rail and I did, too, and as she comes back, I grabbed the rod again, and reached down and caught her by the elbow, and the car came to a stop again."

The witness explained that between the first stopping of the car and when it started again was "two or three seconds, an inappreciable sort of time;" that "there was no signal given of the second starting of the car, though the bell was rung for the first.  The door was open at the first stop, and continued open until the second stop."  The plaintiff corroborated the foregoing testimony, swearing that:

"The car stopped, and I, starting to go out of the car the same way I got on, took and leaned towards Mrs. Nichols, and she said, 'The other way, Bess.'  I stepped back, keeping my right foot on the floor and moving my left foot; and as I started, the car started with a jerk, and hit me with the full force; and I went to the back of the car and rear; and I threw out this arm, catching hold of the rail with the left here, and throwing my foot back to catch myself, and braced my body and keep from going down; and my heel went in the crack of the floor, and my ankle, quicker than a flash, turned over, and hit against those cleats. Q.  How do you describe the starting of the car?  A.  It was very quick, and jerked, just violently."

Both witnesses testified that about 18 or 20 inches of the flooring was smooth, joining which was flooring, with cleats from a quarter to a half of an inch thick, nailed thereon; that between the cleats and the smooth floor was a crevice, about three quarters of an inch in width.  The plaintiff testified:

"I grabbed a hold of the rod, and my heel went back in that ditch.  My ankle turned, and hit against those cleats."

She also said that, had Mrs. Nichols not caught her, she would have gone to the floor; that the start after the car had stopped "jerked me  *  *  *  around the place where the conductor stands."

"Q.  When the car first stopped, you started to go out the entrance way, did you not?  A.  I let go of the rod and just started, but I didn't go.  Q.  And Mrs. Nichols said: 'The other way, Bess?'  A.  She did.  Q.  You turned around to go out the other way?  A.  I did.  Q.  And that is when the start came, was it not?  A.  When the car jerked, yes.  *  *  *  I hadn't got a chance to turn to start towards the door; I had set my left foot back to turn, when it came.  Q.  Which way were you facing when the jerk came?  A.  South.  Q.  You had not turned at all?  A.  Yes, I turned this way, and went to step my left foot back.  Q.  You were still facing south when the jerk came?  A.  Yes.  Q.  You did not get turned clear around?  A.  No, I hadn't time to.  Q.  How far did the car move in that jerk, as you call it?  A.  Well, there was a car's length, judging from the place we had to get off.  *  *  *  The car stopped again; it didn't more than get started, till it stopped again."

Both witnesses say the conductor was looking towards the door all the time, and that the car had gone considerably past the place where it ordinarily stops, about a car's length.  Mrs. Nichols swore that the jerk of the car threw her against the railing; that "the car started with a jerk, after it had come to a dead standstill, and moved forward about a car's length, and then stopped again with a jerk.  *  *  *  Mrs. Walters let loose of this rail with her left hand, after the car came to a stop for us to get off.  *  *  *  Q.  You say this car started with a jerk?  What kind of a jerk, did you say?  A.  A decided jerk."

She also testified that there was no signal by the conductor to the motorman to start up, after the car first stopped, and no warning was given that it was about to start.

The jury might have found from this evidence that the employees stopped the car and opened the door for plaintiff and her companion to leave the car, and that, as plaintiff stepped

back to turn the other way in going out, the car was suddenly started with a jerk, without warning, and thereby plaintiff was thrown off her balance, to her serious injury. It is conceded that the defendant, as carrier of passengers, was bound to exercise the utmost diligence and foresight consistent with the character of its business, and so to do from the time passengers are about to board its cars until they have left them. The rule was recognized in *Root v. Des Moines City R. Co.*, 113 Iowa 675, that:

"When a car stops, to enable a passenger to alight, it is bound to wait a sufficient length of time to enable him to do so, and that it is negligence to start while he is attempting to get to the ground, or is in a position which would be rendered perilous by the motion of the car."

As approving this rule, see *Lang v. Marshalltown L., P. & R. Co.*, 166 Iowa 548; *Heinze v. Interurban R. Co.*, 139 Iowa 189; *Boice v. Des Moines City R. Co.*, 153 Iowa 472; *Farrell v. Citizens' L. & R. Co.*, 137 Iowa 309. Ordinarily, injuries consequent on sudden movements, jolts, jerks, or lunges of street cars are not actionable, unless unusual and unnecessary. But the implied contract of such a common carrier is to carry safely, and this necessarily includes the furnishing of reasonable opportunity to alight from the car or train safely at the end of the journey; and any movement of the cars after the passenger may be said to have been invited to alight, before he has had a reasonable opportunity to do so, is deemed negligent, whether such movement be unusual and unnecessary or not. Having been induced by the defendant's servants to attempt to leave the cars or train, its duty attaches to stop the train or car a sufficient length of time to enable the passenger to reach the platform or ground in safety; and this duty relates to the place where plaintiff had been induced by the conduct of the servants and the stopping of the train to believe he was to alight, and not to the final stopping of the cars or train, after it moves a few feet farther on. *Nashville, C. & St. L. R. Co. v. Akin*, 140 Tenn. 34 (203 S. W. 329); *Chicago & A. R. Co. v. Arnol*, 144 Ill. 261 (19 L. R. A. 313); *Chesapeake & O. R. Co. v. Borders*, 140 Ky. 548 (140 Am. St. 396); *Benoit v. Boston & N. S. R. Co.*, 216 Mass. 320 (103 N. E. 830). See, also, 4 Ruling Case Law 1245, and cases cited therein. If the witnesses are to be believed, the company's em-

ployees stopped the car at Twenty-third Street, opened the door, and thereby invited the plaintiff and her companion to alight from the car; and, though they must have known that these passengers were so doing, or about to do so, suddenly started the car with a jerk, and thereby threw the plaintiff off her balance, causing serious injury to her ankle. True, plaintiff was not on the steps or platform or immediately at these, but she was starting to go by way of these to the street. In responding to the defendant's invitation to alight, she had released her hold on the railing by which she steadied herself in standing, had stepped back with her left foot, and was about to turn to go out, as the car started on with a jerk; and we are of the opinion that, if the facts were so found, the jury might have concluded that, in view of the situation,—that is, of plaintiff's having started to leave the car,—defendant was negligent in suddenly starting the car, without warning. A person, in leaving the car, starts somewhere, and the act of alighting is not limited to getting off the steps, and the duty of looking after the safety of the passenger is not limited to the mere stepping from the platform or steps. The common carrier owes the duty of exercising a very high degree of care for the safety of the passenger in leaving the car, from any point from which the passenger may start. In *Birmingham R. L. & P. Co. v. Glenn*, 179 Ala. 263 (60 So. 111), a street car jerked, immediately after a lady passenger arose to leave the car, causing her to fall; and recovery was approved on the theory that she was entitled to protection during the entire passage from the car, from beginning to the end; and such is the general rule. We are of the opinion that the jury might well have found that the plaintiff had started to leave the car when it is said to have jerked forward and caused the injuries to plaintiff. The issue should have gone to the jury.

The court did not err in ruling that the doctrine of *res ipsa loquitur* was not applicable, and that negligence was not to be presumed from what happened. See *Fitch v. Mason City & C. L. T. R. Co.*, 124 Iowa 665; *McGinn v. New Orleans R. & L. Co.*, 118 La. 811 (43 So. 450); *Timms v. Old Colony S. R. Co.*, 183 Mass. 193 (66 N. E. 797); *Tabak v. Milwaukee E. R. & L. Co.*, 161 Wis. 422 (154 N. W. 694); *Etson v. Fort Wayne & B. I. R. Co.*, 110 Mich.

2. NEGLIGENCE: res ipsa loquitur.

494 (68 N. W. 298); *De Yoe v. Seattle Elec. Co.*, 53 Wash. 588 (102 Pac. 446).—*Reversed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.