Eva Wheeler, Appellee, v. Des Moines City Railway Company, Appellant.

November 15, 1927.

Rehearing Denied February 17, 1928.

*Corwin R. Bennett*, for appellant.

*John McLennan* and *D. G. Baker*, for appellee.

Morling, J.—The controlling question is whether plaintiff was entitled to go to the jury. The immediate cause of plaintiff's fall was a collision between an automobile (following and attempting to pass) and the overswing of the street car as the street car was turning into another street.

The car was a two-man car, 35 or 40 feet long, provided with rear right-hand entrance and conductor's station at such entrance. The route of the car was east on Walnut Street to Second Street, thence north on Second. The car was admitted to Second Street by means of a switch, which the motorman operated through the front window. The car stopped at the switch for the purpose of receiving and discharging passengers, as well as to open the switch. The overswing of the rear end of

the car beyond the right rail in turning into Second Street is, according to plaintiff's evidence, about three feet, six inches. While the car was standing at the switch, a large ice truck stood between it and the right or south curb of Walnut Street. It is assumed, but not proved, that the space between the car and the truck was sufficient to permit the passage of an automobile between them when the car was facing east. On account of the overswing, it was not sufficient when the car was turning into Second Street. While the car was at the switch, an automobile stood two to eight feet back of it. After the car started, the driver of the automobile sought to pass between the car and the truck, but the automobile was caught by the overswing, pushed against the truck, and gripped between them. The street car was brought to a sudden stop. The motorman says that the current was shut off, as he started into the curve; that he did not apply the brakes, but the car came to a stop from the resistance of the automobile and truck. The defendant claims this to be the established fact. The trouble with this contention is that defendant introduced the testimony of a passenger that: "As soon as the crash was heard, the motorman applied his brakes, and the car stopped immediately." As the case stands, it is immaterial whether the car was brought to a stop by the physical resistance of the automobile and truck or as the result of applying the brakes; for the evidence is that the brakes, if applied, were applied because of the collision.

The plaintiff boarded the car at the switch. She stopped at the conductor's station to pay her fare and receive change. She was incumbered with a package which she was carrying, and with a little girl who was accompanying her. The car started about the time she paid her fare. While proceeding to a seat, she was thrown, fell against one of the seats, and thereby sustained the injuries of which she complains. At this point it is necessary to consider her testimony. She says:

"The street car started with a jerk. I should judge the street car had gone around 5 feet before it had reached a speed of 15 miles an hour. The starting of the street car by a jerk overbalanced me. The street car stopped with a lurch. It stopped instantly. I was still off my balance by reason of the manner they started there at the time they stopped the car. That throwed me onto the seat. * * * That street car got up a

speed of 15 miles an hour in 5 feet. I was overbalanced from the car starting, and when the car was struck from the rear, it threw me. The collision of the automobile is what threw me, along with being overbalanced. I was lurched sideways from the starting of the car. I hadn't fallen completely from the starting of the car, but I was lurched sideways and overbalanced. The street car ran about the length of itself before it stopped,— 35 or 40 feet. It might have been more than that. It stopped with a sudden lurch when the back end struck that automobile. The seat I fell on was along to the north or left-hand side of the street car. I had been taking a step toward the front end of the car. * * * The car started immediately upon my entering the car. Immediately as I entered the car, the conductor closed the door, and I handed him my fare, and the car started. After that, I received my change, and made one step toward the front of the car before I fell. The car started immediately upon my getting my change. As I entered the car, the doors were immediately closed behind me. I handed the conductor a dime. I had the little girl with me, and in watching her,—I was watching her when I received my change from the conductor,—at the same time, the car started, overbalancing me. * * * I was still on the back platform of the car when it started. I was west of the conductor at that time. At the time I gave him the dime, I was west of him. As he handed me my change, I was just to the side of him, and I started to raise my foot to go up that step. I was east of him at the time it threw me. It was the sudden stop of the street car that threw me onto the seat."

There was no other evidence of the cause or manner of her fall. Some of the items of negligence assigned were not submitted to the jury, and we do not pause to detail them.

The motorman testified that he did not see the automobile at any time before the collision. He did not look. He saw the ice truck. He says that he could not have glanced around and seen the automobile without taking chances of running over somebody, and could not have seen the automobile attempting to pass if he had looked around through the glass. He testified that they had no signal that they gave to passengers or to anyone approaching with an automobile that they were about to turn on a curve. The conductor saw the truck, and also the automobile standing in the rear of the car, headed east. He says

the automobile started about the time the car did; that, at the time he gave the signal to start, he thought the automobile would stay there until the car had passed round the curve.

"What I was watching was whether the rear end of the car would hit the truck as we turned on the curve there. I did not give any signal to this automobile that we were going to make the curve, instead of going on straight ahead. * * * This automobile was two feet back of the rear end of the street car. The street car started before the automobile."

There were two street-car tracks on both Walnut and Second Streets. Those laid on Walnut continued east beyond Second Street.

The court submitted to the jury the following charges of negligence:

"Instruction Number 1. The particular charges of negligence made by plaintiff in her petition, as amended, against the defendant, and submitted to you for your consideration, are:

"1. In starting said street car when said ice truck and automobile were at the place hereinbefore alleged, and at a place so as not to permit said street car to pass said automobile and truck without coming in contact with the same.

"2. In starting said street car too quickly, and putting the same into a high rate of speed without warning to the plaintiff, at a time when said automobile and ice truck were at the place alleged, and in running said street car at said high rate of speed to and against the said automobile then and there in said street, and thence bringing said street car to an abrupt and sudden stop. * * *

"Instruction No. 2. * * * the plaintiff * * * must establish * * * 2. That the defendant was negligent, through its employees, in one or both of the particulars charged and set out in the two numbered paragraphs in Instruction No. 1 hereof. * * *

"Instruction No. 8. You are further instructed, if you find from a preponderance of the evidence that the defendant's employees in charge of said street car, after plaintiff had boarded same, attempted to run said car around the curve in question knowing, or, in the exercise of that high degree of care required, should have known, that said car could not complete the turn in said curve without coming in contact or collision with the ve-

hicle then standing to the rear and to the right of said street car, should it attempt to pass to the right thereof and between said street car and said ice truck before said street car had passed beyond said ice truck, by reason of the swinging out of the rear part of said car, did come in collision with said automobile, causing said car to come to a sudden stop or jerk, while plaintiff was walking to her seat * * * this would constitute negligence on the part of the defendant; and in this connection you may take into consideration the manner in which the said car was started, * * * the speed of the car before the collision, the distance it had run before it stopped, the fact that an ice truck was standing to the right of said street car, its position, and the fact that an automobile was standing to the rear and to the right of said street car * * * ''

There was no evidence upon which to base the first charge of negligence, as set out in instruction No. 1. The undisputed evidence is that the automobile was standing to the rear of the street car when the street car was started at the switch. The street car did not pass the automobile. The collision resulted from the effort of the automobile driver to pass between the street car and the truck while the street car was making the turn.

Instructions Nos. 1 and 2 in the second charge of negligence submitted include the elements of starting the street car too quickly and putting it into a high rate of speed. The only evidence on which to base this charge is that of the plaintiff, above set forth, that the street car started with a jerk, and got up a speed of 15 miles an hour in 5 feet. Her opinion that the car got up a speed of 15 miles an hour in 5 feet is so wanting in foundation, so inherently improbable, and so irreconcilable with the undisputed physical facts that the court would be without justification in accepting it as a basis of liability. The plaintiff could have no sufficient ground for such an opinion. A rate of 15 miles an hour is more than 20 feet in a second. Plaintiff at first testified that the back end of the street car and the back end of the ice truck were about even when she boarded the car. On being recalled, she said that the southwest corner of the rear end of the truck was a little west of the center of the street car. She said that:

''The ice truck was headed southeast. The front end of the

truck was about a foot from the curb, and the hind end about six feet out from the curb.''

Another witness says that the rear of the truck was about three feet from the curb, the front end flush with it, and the street car, when it stopped, a little ahead of the truck, and that the front part of the automobile was opposite the rear part of the truck at the time of the collision. The evidence is that the truck was standing on Walnut Street. There is none that it projected over into Second Street. The evidence is that the front end ''was flush up against Second Street and the rear end would be the length of the truck from the west edge of Second Street.'' The plaintiff's case is based on the theory that the collision was with the overswing of the street car. The overswing was in Walnut Street, and must have been over the south rail in that street. The witnesses say that the street car went its own length, 35 or 40 feet. While plaintiff says it went ''that or more,'' the collision must, on her testimony, have occurred at the rear end of the truck as the truck was located at the time she boarded the car, for the truck was not moved. This leaves in plaintiff's evidence on this proposition, therefore, only her statement that ''the street car started with a jerk.'' There is no evidence that the jerk was unusual, violent, unnecessary, or dangerous.

''Ordinarily, injuries consequent on sudden movements, jolts, jerks, or lunges of street cars are not actionable, unless unusual and unnecessary.'' *Walters v. Des Moines City R. Co.*, 191 Iowa 196, 200.

See, also, *Boston Elevated R. Co. v. Smith*, 94 C. C. A. 84 (168 Fed. 628); *Byron v. Lynn & B. R. Co.*, 177 Mass. 303 (58 N. E. 1015).

Plaintiff says that from the starting of the car she ''was lurched sideways and overbalanced.'' This would quite ordinarily result from the turning of the car into another street. It was not the manner of starting or the speed that caused her to fall. It was the sudden stopping of the car. The cause of the sudden stop was the collision; that was ''the thing amiss.''

The remaining theory of the instructions, and that upon which the plaintiff insists; is that the collision was the result of defendant's negligence. There is no evidence to charge either of the car men with knowledge that the automobile driver intended to pass between the overswing and the truck. The over-

swing of such a car in making such a turn is a necessary and obvious physical fact. It was spoken of as an "obvious fact" in *Mangan v. Des Moines City R. Co.*, 200 Iowa 597, 605. Other users of the street are chargeable with notice of it. Cases cited in idem; *El Paso Elec. Co. v. Ludlow* (Tex. Civ. App.), 291 S. W. 619; *Gribbins v. Kentucky Term. & T. Co.*, 150 Ky. 276 (150 S. W. 338, 339); *South Covington & C. St. R. Co. v. Besse* (Ky.), 108 S. W. 848. In the *Mangan* case, the plaintiff was protected from the charge of contributory negligence by keeping within the safety zone marked out by the street car company. A street railway is under no duty to keep a lookout to prevent a collision on account of overswing, or to give notice or warning of danger therefrom,—at least until the company's employees have actual knowledge of impending peril. Cases above cited. The defendant set the street car in motion, but did not start the automobile, and was not bound to anticipate that the automobile driver would attempt to pass between the truck and the street car while the street car was making the swing. The car men had the right to assume that the driver of the automobile would not take such risk, until his purpose to do so became apparent. *Underwood v. Oskaloosa T. & L. Co.*, 157 Iowa 352, 356; *Williams v. Chicago, M. & St. P. R. Co.*, 139 Iowa 552. Plaintiff urges that the defendant was under the duty of not exposing its passengers to any danger which human foresight and care could apprehend or provide against,—relying on *Kliebenstein v. Iowa R. & L. Co.*, 193 Iowa 892; *Fitzgerald v. Des Moines City R. Co.*, 201 Iowa 1302; *Arnett v. Illinois Cent. R. Co.*, 188 Iowa 540; *Walters v. Des Moines City R. Co.*, 191 Iowa 196; *Kellow v. Central Iowa R. Co.*, 68 Iowa 470, 478. The rule has no application to the facts here. The negligence which resulted in the collision was that of the automobile driver. He was a stranger to the defendant, and had no connection with the operation of the car. He was not under the defendant's control, or subject to defendant's directions. His was an independent tort. We need not discuss the rule adopted by a number of courts that with respect to the acts of such strangers the carrier is under the duty of exercising only ordinary care. *Fewings v. Mendenhall*, 88 Minn. 336 (93 N. W. 127); *Delaware, L. & W. R. Co. v. Donahue*, 238 Fed. 770. See *Hillman v. Georgia R. & B. Co.*, 126 Ga. 814 (56 S. E. 68). The carrier is not liable for independent wrongs

perpetrated by strangers on the passenger which it could not reasonably have anticipated or apprehended. *Felton v. Chicago, R. I. & P. R. Co.*, 69 Iowa 577; *Starr v. Chicago, B. & Q. R. Co.*, 156 Iowa 311; 2 Hutchinson on the Law of Carriers (3d Ed.), Section 980 *et seq.*; 10 Corpus Juris 900 *et seq.*, 902 *et seq.*; *Takacs v. Detroit United Railway*, 234 Mich. 42 (207 N. W. 907); *Hatfield v. Payne*, 195 Ky. 310 (242 S. W. 32); *Norris v. Southern Railway*, 84 S. C. 15 (65 S. E. 956); *Jackson v. Boston Elevated R. Co.*, 217 Mass. 515 (105 N. E. 379); *Tracy v. Boston Elevated R. Co.*, 217 Mass. 569 (105 N. E. 351); *Terre Haute I. & E. T. Co. v. Scott*, 197 Ind. 587 (150 N. E. 777); *Beasley v. Hines*, 143 Ark. 54 (219 S. W. 757, 15 A. L. R. 864); *Tommc v. Pullman Co.*, 207 Ala. 511 (93 So. 462). The defendant had no reason to apprehend or anticipate the negligent act of the automobile driver or the resulting injury therefrom to a passenger.

To hold that, under the circumstances of this case, the defendant's employees were under any duty of warning the driver of a peril more apparent to him than to them, or of warning the plaintiff of the possibility of collision, would be a refinement of the law of negligence altogether indefensible.

The case is not one of concurring negligence, rendering the defendant liable, nor is it one of an intervening agency set in operation by defendant.—*Reversed.*

EVANS, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.