E. N. BISSO and SON, a Louisiana Partnership composed of E. N. Bisso and J. A. Bisso, II, and E. N. Bisso and J. A. Bisso, II, Appellants,

v.

Jules MILLER, Appellee.

No. 15899.

United States Court of Appeals Fifth Circuit.

May 18, 1956.

George B. Matthews, New Orleans, La., Lemle & Kelleher, New Orleans, La., of counsel, for appellants.

Edward M. Heller, T. C. W. Ellis, New Orleans, La., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

This suit was brought by appellee under the Jones Act [1] to recover damages for injuries sustained by him on July 12, 1953, while employed by appellant as a seaman on its tug, Napoleon, at New Orleans, Louisiana. The complaint al-

1. Title 46 U.S.C.A. § 688.

leged that appellee suffered a broken hip and resulting complications from appellants' negligent failure to furnish him a reasonably safe place to work, as well as from negligence of the tug crew and general unseaworthiness of the tug. Appellants, in answer, denied any negligence, and pleaded contributory negligence proximately causing appellee's injury. Trial to a jury resulted in a verdict and judgment for appellee, with his damages assessed at $20,000.00.

Broadly stated, the testimony as to the manner of appellee's injury presumably accepted by the jury, and tending to support the verdict and award, shows that on the date of the accident the old ferryboat, Wayne, was moored to the east bank of the Mississippi River at appellants' landing at the end of Walnut Street in New Orleans; that the tug, Napoleon, under a bareboat charter to appellants, was bringing up a barge to be secured to the outboard side of the Wayne; that, to facilitate the mooring operation, appellee and another deckhand, Boudreaux, were then standing at the head of the barge as it was coming in, with the intention of passing a line from the barge to the mooring bitts on the Wayne and securing it; that, as the barge was practically abreast of the Wayne, appellee stepped from the deck of the barge to a railing on the Wayne almost level with it, walked about three steps forward to a roof support two feet from the bitt, and reached back to grasp the line from Boudreaux, about which time the barge, then making from two and one-half to three miles an hour, struck a steel davit rigged on the outboard side of the Wayne, causing it to roll upward and backward in a twisting fashion so as to strike appellee and knock him to the deck of the Wayne, and cause the injuries for which recovery was sought.

■ Appellants' basic reliance for reversal is upon the alleged insufficiency of the evidence to show any breach of their duty to afford appellee a reasonably safe place to work, or to show any negligent operation or unseaworthiness of the tug which might otherwise justify the award. They insist that the physical facts proved, as well as the witness Boudreaux's vacillations, inconsistencies, and recantation at the trial of his former testimony as to appellee having been struck by the davit,[2] require this Court's determination, as a matter of law, that the accident could not possibly have happened as appellee testified; or that, even accepting appellee's version of his injury, it resulted from his own negligence in voluntarily leaving his place of safety on the barge to step into the unsafe condition aboard the Wayne created by the swinging davit.

Appellee insists that his testimony as to the manner of his injury was not contrary to the physical facts, or manifestly incredible, but was justifiably credited by the jury as entirely plausible and consistent with the physical circumstances and its finding of appellants' liability for their failure to provide appellee with a reasonably safe place to work; that, in spite of Boudreaux's testimonial vacillations, the jury was justified in crediting his initial testimony corroborating appellee's version of the accident, which was supported by another prior, consistent statement of this same witness,[3] and was warranted in rejecting his

2. Boudreaux was appellee's only supporting eyewitness, and at the trial first testified in corroboration of appellee's version of his injury, i. e. that the barge's collision with the davit caused it to swing up and backward so as to strike appellee on his right hip and knock him to the deck of the Wayne. However, when confronted on cross-examination with a prior, inconsistent pre-trial statement, which he had given to one of appellants' attorneys, Bou-

dreaux acknowledged as correct a statement contained therein that "he didn't see anything strike (appellee)," and that appellee simply "lost his footing and fell to his right."

3. After Boudreaux's recantation of his former testimony favorable to appellee, appellee's counsel attempted to introduce a statement which Boudreaux had given to appellee and his son-in-law in Audu-

belated effort to exculpate his employer by reversing his testimony, as aforementioned; finally, that, under other testimony, the jury was warranted in finding that appellee did not voluntarily step aboard the Wayne into the path of the swinging davit, but only did so in furtherance of his duties and in an effort to pass the line through the mooring bitts on his first attempt so as to avoid a collision with other barges ahead, under which theory the finding of liability was fully justified.

A careful study of this record in the light of the above arguments has failed to convince us that the verdict rendered is so lacking in the required evidentiary support under the conflicting testimony as to warrant reversal. See Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608; Wilkerson v. McCarthy, 336 U.S. 53, 57, 63, 69 S.Ct. 413, 93 L.Ed. 497; Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Cf. Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 307–308; see also, 20 Am.Jur., Evidence, § 1183, p. 1033; Wheeler v. Des Moines City R. Co., 205 Iowa 439, 215 N.W. 950, 55 A.L.R. 473. Appellants' arguments as to the physical impossibility of appellee having been struck by the davit, as he testified, are demonstrably unsound, in that they are mainly based on testimony by appellants' own witnesses as to the size, weight, and shape of the davit, which was contradicted by appellee's proof and presumably rejected by the jury. In-

deed, the short answer justifying the jury's rejection of many of appellants' assumptions as to the dimensions and rigid attachment of the davit, precluding its movement in the manner claimed, is that the jury was not bound to credit this proof in view of appellee's testimony that the davit which struck him was not the same as that revealed by the photographic exhibits and described by appellants' witnesses, but was much shorter; as well as by other testimony that it was only loosely secured near the top of the Wayne's railing by a one-half inch rope, rather than doubly attached to the side of that vessel both by a rope near the top and chain at the bottom, as appellants attempted to prove.[4]

In a somewhat analogous factual situation in a suit brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., this Court recently rejected a similar argument that the physical facts and mathematical probabilities involved precluded the occurrence of an injury in accordance with the claimant's proof, stating in part:

"Appellant's mechanical theory that the boom could not have jerked appellee from five to seven feet is based not upon fact but upon the assumption that the safety chains would not permit the boom to swing more than two and one-half feet from the side of the car. On the basis of this premise it is argued that if the boom did in fact swing westward from either the center of

bon Park, the second page of which was supposedly a letter written by Boudreaux to appellee two weeks previously containing the warning, "Miller, whatever you do don't mention my name to anyone, please." The trial court admitted the testimony as to Boudreaux's prior consistent statement for impeachment purposes, but excluded it from jury consideration as affirmative proof tending to bolster the witness' initial testimony favorable to appellee.

4. Notwithstanding Boudreaux's recantation as aforementioned, we think his testimony in these particulars was specific and detailed, and was not so discredited by im-

peachment as to require its rejection in law. In this connection, Boudreaux testified:

"Q. How was it (the davit) attached to the Wayne? A. It was tied with a rope about four feet long.

"Q. How many places was it at that time tied in? A. In one.

\*    \*    \*    \*    \*

"Q. Was the davit tied at the bottom of the davit in any way? A. No, it wasn't.

\*    \*    \*    \*    \*

"Q. Was there any wire or chain on that davit, holding that davit, at all? A. No, there wasn't."

the car or the car's westward edge it would in neither instance exert a pull because of the slack in the line. This theory is based on the expression of a witness' best opinion as to the amount of slack in the line which, after all, was only an estimate and not a statement of an absolute fact concerning which there can be no dispute so as to bring into play the doctrine of absolute physical facts. * * * There was in our view sufficient evidence to go to the jury on the question whether the defendant's roadmaster, Williams, did operate the rail loader in such a negligent manner as to cause appellee to be jerked to the ground by the boom rope. Indeed, there was positive evidence that the boom did jerk at times and since Prine did in some way get jerked to the ground it is plain enough that how he got there, and what caused it were issues of fact for the jury. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 55, 63 S.Ct. 444, 87 L.Ed. 610." Ft. Worth & D. Ry. Co. v. Prine, 5 Cir., 211 F.2d 697, 700.

We think the rationale of that decision applies with equal force here, for

"So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." 20 Am.Jur., Evidence, § 1183, p. 1034.[5]

While we agree with appellants that Boudreaux's testimony with respect to the cause of appellee's injury was so equivocal and contradictory as to destroy much of its corroborative force, we think the jury would have been justified under this record in attributing his prior, inconsistent statement to a desire to ingratiate himself by exonerating his employer from blame, and his vacillations at the trial to emotional instability under the rigor of skillful cross-examination. In any event, discounting Boudreaux's testimony as to causation in its entirety, we think appellee's testimony alone, together with some significant admissions against interest by some of appellants' witnesses,[6] was sufficient to justify the submission and award, at least on the theory that appellants breached their duty to provide appellee with a reasonably safe place to work.

■ Finally, we think appellee's testimony unquestionably precludes our

---

5. This rule is applicable a fortiori to a situation where, as here, the overall proof contains many variable factors, such as appellee's exact position at the time of his injury; the size, shape and weight of the davit with which he was hit; its method of attachment to the Wayne, etc.

6. For example, Captain Edwin Bisso, under direct examination by his own attorney, stated, "I wasn't there when it (presumably the davit) hit him," and Captain Dugas stated in his accident report that appellee "got hit on the right side," although he testified at the trial that he was looking the other way and did not see appellee injured. However, the cook aboard the tug, Isaac Soileau, testified that he heard Captain Dugas state after the accident, "That's a hard piece of iron that hit that man."

7. "Q. Who told you to step onto the Wayne? A. Nobody.

"Q. Why didn't you just throw the line or reach out and put the eye over it? A. Because they have a barge in the front here (indicating). They have a barge in—some barge in there tied up, some barge in front there.

"Q. Another barge? A. Yes. I didn't want this barge to hit them barges over there, and this wasn't clear so I can throw my rope, but this one has a big post in front of that bitt, and I don't want to miss, so I stepped onto this one (indicating). I wanted to put the rope on that before, and it gives me a chance to check the barge, because I couldn't let the barge go on too much longer because he (sic) hit the other barge.

"Q. Do I understand that there was another barge tied up outside of the Wayne, forward? A. Not on the Wayne, just on the front of the Wayne, all—

"Q. And if your barge had kept going, it would have run into those other barges or barge? A. Yes, sure."

holding, as a matter of law, that he was barred from recovery on the suggested theory that he voluntarily stepped into the hazardous condition aboard the Wayne created by the collision and the swinging davit.[7] Under appellee's version, we think the jury was justified in concluding that he stepped aboard the Wayne only in a good faith effort to moor the barge more securely, and we are cited to no persuasive authority which we think justifies barring recovery simply because it now appears, by hindsight, that a method of tying the barge involving less personal risk to him may have been available. See Larson v. Tri-City Electric Service Co., 7 Cir., 132 F. 2d 693, 697; Thomas Jordan, Inc., v. Mayronne Drilling Mud, Etc., 5 Cir., 214 F.2d 410, 413; Cf. United Geophysical Co. v. Vela, 5 Cir., 231 F.2d 816.

Affirmed.