Fannie L. Patterson v. The Omaha & Council Bluffs Railway and Bridge Company, Appellants.

Injury to Passenger Alighting: negligence, immaterial plea. If a street car stops at a given place, though not to allow plaintiff to alight, and defendant's employees knew, or should have known, that

plaintiff was trying to alight, the starting of the car before she does so, is negligence, and while the purpose of the stop was evidence on whether defendant had actual knowledge of plaintiff's attempt to alight, an allegation in the petition that the stop was made to permit plaintiff to get off is mere surplusage.   (2)

Conflicting Evidence: Review: VERDICT.   On appeal, a finding of fact resting on conflicting evidence will be sustained.   (1)

Harmless Misconduct.   The fact that an immaterial special interrogatory is answered, "don't know," by the jury, constitutes no misconduct or ground for reversal.   (3)

*Appeal from Pottawattamie District Court.*—Hon. A. B. Thornell, Judge.

Friday, February 2, 1894.

The defendant company operates a line of street railway on some of the streets in Council Bluffs, Iowa, and in Omaha, Nebraska. The plaintiff resided in 1890 in Council Bluffs, and was employed as a draughtswoman in an office in Omaha. She traveled to and from her work on defendant's railway. On the twenty-eighth day of October, 1890, as she was returning to her home, and was alighting from the car at Fifth avenue, in Council Bluffs, she fell, and was permanently injured, and this action is to recover her damage. Her claim is that the car stopped for her to alight, and was then negligently started, causing her injury. The answer puts in issue the fact of negligence, and the cause was tried to a jury that returned a verdict for plaintiff, and the defendant appeals. *Affirmed.*

*Wright & Baldwin* for appellant.

*Donovan & Evans* for appellee.

Granger, C. J.—I.   There is a claim that the verdict is without support in the evidence. Where defendant's line running on Pearl street crosses Fifth avenue is where plaintiff was in the habit of transferring or alight-

ing.   The car approached Fifth avenue on Pearl street
from the north.   The custom of the company was, and
its rules require, that the car should cross the avenue
before stopping for passengers to alight.   This would
require the plaintiff to alight on the south side of the
avenue.   As she claims, the car stopped on the north
side, and, as she was alighting, it started suddenly,
throwing her to the ground, resulting in her injury.
There is no dispute but that plaintiff attempted to
alight from the car; that, in so doing, she fell, and was
injured; but it is in dispute whether or not the car
actually stopped, or merely "slowed down almost to a
standstill," in order to make a switch.   The court,
under the averments of the petition, held that, to
enable plaintiff to recover, she must show that the car
actually stopped, and was negligently started, resulting
in the injury.   The jury specially found that the car
did stop before it reached the south side of Fifth
avenue, and, also, that it was not in motion when she
attempted to alight.   These findings were made under
a plain conflict of evidence as to the facts.   The plaintiff
testified that when the car left Broadway, and turned into
Pearl street, she requested the conductor to let her off
at the courthouse, and he said, "All right."   She said:
"We hadn't quite reached the courthouse when the
conductor turned and called 'Fifth avenue,' and, as he
called, the car began to slack up, and we hadn't more
than reached the switch when the car stopped.   *   *   *
When the conductor called 'Fifth avenue,' I prepared
to get off, and, just as the car stopped, I attempted to
get off, but I did not more than touch one foot to the
ground when the car started, and threw me to the
pavement."   She further said:   "The car sometimes
stopped at the north side of Fifth avenue, and some-
times at the south side of Fifth avenue.*   *   *   The
car stopped more times north of Fifth avenue than
south.   I think a half dozen times would cover all the

times I got off on the north side of Fifth avenue." She also said that it was customary for the cars to stop for her on the north side of Fifth avenue when she requested it. These facts are denied by witnesses for the defendant, but the state of the evidence is not such as to permit us to disturb the findings of facts by the jury. It is not important that we should discuss the details of the evidence.

II. The following is the tenth instruction given to the jury: "If the evidence shows that the employees of the defendant had stopped the car on which plaintiff was riding at the place where it is claimed the accident occurred, but fails to show that such stop had been made for the purpose of allowing the plaintiff to alight therefrom, then whether the act of the defendant's employees in moving said car forward when plaintiff was attempting to alight therefrom would be negligence or not, would depend upon whether said employees knew, or in the exercise of due diligence and care, ought to have known, before starting said car, and in time to avoid the injury, that plaintiff was attempting to alight therefrom. It was the duty of the defendant's employees, in the operation of defendant's cars, to exercise the highest degree of diligence and care to avoid injury to passengers; and if the evidence shows that they had stopped the car upon which plaintiff was riding at the time in question at or near the point where it is claimed the injury occurred, but fails to show that it was stopped for the purpose of enabling plaintiff to get off, but does show that the defendant's employees knew, or, in the exercise of due care, ought to have known, in time to avoid the injury to plaintiff, that plaintiff was attempting to alight from said car, and, under such circumstances, started said car forward while plaintiff was attempting to alight, such act on their part would be negligence; and if such negligent act caused plain-

tiff's injury, without negligence on her part directly contributing thereto, defendant would be liable therefor." The criticism upon the instruction is that it raises a new issue in the case, because the petition alleges that the car "stopped for the purpose of permitting the said plaintiff to get off," and the instruction permits a recovery without reference to the purpose for which the car was stopped. The argument overlooks a very important part of the instruction, wherein it permits a recovery only in case the employees knew, after the car had stopped, that plaintiff was attempting to alight, or in the exercise of due care should have known it, and then started the car, resulting in her injury. The purpose or intention in stopping the car was not of the *gravamen* of the action. It was not a material or necessary fact to be found in the process of reaching a verdict. As an averment in the petition, it was merely surplusage. As a matter of evidence, it would be important, as showing actual knowledge of her attempt to alight, and this knowledge is what the district court adopted as a controlling fact, from which negligence could be found in starting the car. If the employees knew of her attempt to alight, either from the fact that the car was stopped for that purpose, or from any other fact, or, in the exercise of due care, they should have known it, the rule of the instruction is that it was negligence to start it while she was alighting. The rule, as a proposition of law, is hardly open to question, and the evidence in the case fully justifies the giving of it.

III. Among the interrogatories submitted to the jury was the following: "At what speed was the train in question moving just prior to the time it reached Fifth Avenue, and as it was crossing Fifth avenue?" The jury answered: "Don't know." This is urged as misconduct. The answer was not important. Defendant admits that the train, at the point in question,

was "slowed down almost to a standstill," and plaintiff contends that it was stopped entirely. The speed of the train at other times is not important, and it seems to have been a question on which the jury did not agree, or could not reach a conclusion. Admit, for the purpose of the case, almost any answer that in reason could have been given, and it could not affect the result. It was not an ultimate fact. There are complaints as to one or two other instructions, and some general complaints as to the instructions as a whole, as that they were unfair to the defendant, but we think the complaints are without merit. The case seems to us to have been fairly submitted, and the judgment is AFFIRMED.