J. D. CLARK, Appellee, v. SIOUX COUNTY, Appellant.

BRIDGES: County Bridges—Defective Approach—Contributory Negligence. Evidence reviewed, and held insufficient to charge an injured person with contributory negligence *per se* in driving upon

the approach to a bridge and into a partially concealed washout therein, even though the injured person was driving a blind horse and was not keeping constant outlook towards the bridge.

**NEGLIGENCE:** Contributory Negligence—Public Highways—Pre-
2 sumption as to Condition. Principle recognized that one may, to a reasonable extent, rely upon the presumption that the public authorities are maintaining public places committed to their care, in a reasonably safe condition. So applied as to a county bridge.

**DAMAGES:** Evidence—Weight and Sufficiency—Negligence. Evi-
3 dence reviewed and held to justify the jury in finding that an injured person had, as the proximate result of an accident, received injuries, separate and distinct from prior-existing injuries, sufficient to support the verdict rendered.

**DAMAGES:** Evidence—Declarations—Pain and Suffering—Prior
4 Physical Condition. Declarations of an injured person as to pain are competent; likewise the physical condition of the person prior and subsequent to the injury.

**BRIDGES:** County Bridges—Approaches—Delegating Maintenance
5 to Others—Effect. A county may not escape liability for the negligent construction or maintenance of the "approach" to a county bridge by turning over such construction and maintenance to other public authorities.

**BRIDGES:** County Bridges—Dangerous Condition—Notice. Prin-
6 ciple recognized that lapse of time may furnish sufficient notice to a municipality of the defective and dangerous condition of its public highways.

**TRIAL:** Verdict—$1,050—Excessiveness—Personal Injury. Verdict
7 for $1,050 sustained. Plaintiff, prior to the accident, had been in ill health and had undergone a surgical operation, but was convalescent, though nervous. At the time of her injury she jumped from a buggy, injuring her old surgical wounds and bringing on *prolapsus uteri*, from which she was suffering at the time of trial, nine months later. Full recovery was uncertain.

*Appeal from O'Brien District Court.*—W. D. BOIES, Judge.

FRIDAY, OCTOBER 27, 1916.

ACTION at law to recover damages for personal injury alleged to have been caused by defendant's negligence. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed*.

*Anthony Te Paske* and *T. E. Diamond*, for appellant.

*C. A. Plank* and *Cecil Gantt*, for appellee.

WEAVER, J.—The plaintiff sues as assignee of Mrs. A. F. Johnson, and alleges that, while his assignor was attempting to drive across a certain bridge, built and maintained by the defendant county, her horse fell into a hole in said bridge, or in the approach thereto, and that, in apprehension or fright caused by such accident, she jumped from the carriage in which she was driving, and, without negligence on her own part, received a severe injury. He charges the defendant with negligence, in that the defective condition of the bridge had existed for a long time without being repaired, and without fence or guard to prevent injury to persons rightfully traveling along the public way. Answering the claim thus made, defendant denies that it was in any manner negligent with respect to the bridge, and alleges that plaintiff's injury, if any, was due to her own want of reasonable care. Upon trial to a jury, verdict was returned in plaintiff's favor for $1,050, and from the judgment entered thereon, defendant has appealed. The appellant argues for a reversal on the following grounds:

I. That Mrs. Johnson was guilty of contributory negligence as a matter of law. It is said that she was driving a blind horse, and was, therefore, bound to be more watchful to discover defects in the road and bridge, and that the hole into which the horse fell was so large and so plainly visible that, in the exercise of due care, she ought to have discovered it in time to avoid the accident. There was evidence from which the jury could find that the approach was a fill of earth or soil, retained in place by planking extending across the end of the main bridge structure and back a short distance on each side of the roadway. The water in the stream below had worked its way under the planking, washing out some of the earth, and making a hole which extended a

1. BRIDGES: county bridges: defective approach: contributory negligence.

few feet along the planking on the north side to the end of
the main bridge structure, and thence south along the struc-
ture to a point near the north wheel track in the traveled
path. It was not guarded in any manner, but one approach-
ing from the east, as did Mrs. Johnson, and seeing the de-
fective place, could avoid it by driving closely along the
south side of the way. A witness who was familiar with the
place was at work near by at the time of the accident, and
came to the aid of Mrs. Johnson when she screamed for help.
He said the fill had washed away to a greater extent than
was apparent to casual inspection, because the hollow space
so created was in part covered by a crust at the top, next to
the visible opening. He says:

"The crust broke off with the horse. You wouldn't
know, if you looked over the top, before the horse crumbled
it by falling, and hadn't made an examination underneath,
that the dirt under the crust was eaten away."

His statement is supported also by the undisputed fact
that, when he came to the rescue, the horse was found in a
sitting position, with its hind parts in the hole and its fore-
feet still upon the main structure of the bridge. The horse
was blind, but is described as being gentle, and had been
frequently driven by the women of the family. There is no
showing that it was not under the control of the driver. Mrs.
Johnson did not know of the existence of the defect and did
not discover it until the horse had fallen. She had with her
another woman, with whom she carried on more or less con-
versation, and together they noted the fields through which
they were passing. Counsel say she did not look ahead at all,
nor take any pains to ascertain whether there were any
obstructions in the highway; but she does not so say, and no
other witness attempts to speak concerning the fact in this
respect. She does say she was visiting with her companion
and noting the country scenery, but this is by no means
inconsistent with the exercise of reasonable care in driving
along a country road. She was, of course, bound to exercise

the care of a reasonably prudent person under the circumstances, and with due consideration of the fact that the horse was blind; but there is no hard and fast rule of law requiring her to keep her eyes glued upon the road in front and be herself blind to the scenes through which she drives, or even to refrain from talk with the person by her side.

She cannot go heedlessly into a peril which is or should be manifest to the apprehension of an ordinarily careful person, but she may rely, to a reasonable extent, on the assumption that the public authorities, to whose keeping the care and maintenance of roads and bridges are committed, have done their duty. Whether a given act or omission is consistent with the care of an ordinarily prudent person is, with very rare exceptions, a question of fact, to be determined by the jury upon consideration of all the facts and circumstances, and we see nothing in the case before us to except it from the operation of this rule. If the witness Brunskill is to be believed (and his credibility was for the determination of the jury), the horse was moving along or very near the middle of the traveled path, and would have passed the defective spot in entire safety had he not broken through the crust or hardened surface into the space below, which had been hollowed out by the action of the water. The condition described by the witness was not patent to a traveler over the road, and we cannot say that Mrs. Johnson was negligent in failing to discover and avoid it. In other words, the jury could well have believed that the woman did not drive the horse into the hole, but that the horse was trapped by the giving way of the road surface, which gave no external evidence of its weakness. It is true the woman was driving a blind horse, but that was not *per se* a negligent act. It probably imposed upon her more vigilant watchfulness to keep the animal in proper place in the road, but, as we have already said, the jury could have found from the evidence that he was in the usually traveled path. But one witness

2. NEGLIGENCE: contributory negligence: public highways: presumption as to condition.

undertakes to say that the hole was visible any considerable distance, and he, after saying a person could see it 40 or 50 feet away, qualifies this expression by adding, "if he were looking for it." We are well satisfied that the question of contributory negligence was for the jury and not for the court, and there was no error in the court's refusal to direct a verdict for defendant or to set aside the verdict on that ground.

II. Error is assigned upon the court's refusal to direct a verdict for defendant, on the theory that plaintiff failed to show that Mrs. Johnson suffered any injury or damage as a result of the accident, and that the finding of the jury thereon was mere speculation and conjecture. It appears in evidence that the woman had been in ill health, and had undergone a surgical operation for appendicitis and some other abnormal condition of the bowels, and she had not fully recovered from the effects of the treatment at the time of the accident. According to her story, she was convalescent, but in a more or less nervous condition, and, when the horse suddenly dropped into the hole in the bridge or approach, she jumped from the buggy and screamed for help; and it is the theory of plaintiff's case that in jumping from the buggy Mrs. Johnson suffered a strain or injury to the surgical wounds from which she was then convalescent, and also brought on a condition of *prolapsus uteri*, from which she was still suffering at the time of the trial. She shows that she was still suffering from these conditions up to the time of this action, and that full recovery therefrom is uncertain. According to her evidence, she was progressing favorably in convalescence from her operation, and the effect of the accident was to render her worse, and she has never regained the improvement so lost. She has also suffered increased pain and has grown poorer in flesh. Her physician, who was called within a few days after the accident, says that it was his opinion that Mrs. Johnson was, at the time of his visit, suffering from a condition of *prolapsus,*

3. DAMAGES: evidence: weight and sufficiency: negligence.

and that the ligaments which support the uterus in normal position had been torn away. He further says this abnormal condition did not exist at the time of the operation upon her, less than two months before the injury of which she complains. Immediately before the trial, this physician made another examination of Mrs. Johnson and found her still suffering from the *prolapsus*. The woman is also corroborated by one or more witnesses as to her physical condition immediately before and after the alleged injury. The showing is clearly sufficient to sustain a finding that plaintiff's assignor sustained a material injury at the time, and that the injury was the proximate result of the accident.

Evidence of her condition before and after her alleged injury, and of her complaints of pain and suffering, is competent in such case. *King v. City of Oshkosh*, 75 Wis. 517;

4. DAMAGES: evidence: declarations: pain and suffering: prior physical condition.

*Armstrong v. Town of Ackley*, 71 Iowa 76. The contention that there is an entire absence of evidence that plaintiff suffered injury, as charged by her, is without merit. It may be true that she was not free from physical ailment and weakness before the injury, but such admitted fact constitutes no defense to her claim for damages, if otherwise she is found entitled to recover. Such fact is, however, material evidence upon the question of the amount of her damages, if she is found entitled to recover, because defendant's liability, if any, must be limited to compensation for injury occasioned by its own negligence (if negligence be proved), and not for any injury or impaired health brought about from other causes.

III. Counsel further argue that there was no evidence that the county built or maintained the approach to the bridge, or that it had any notice of the defective condition of

5. BRIDGES: county bridges: approaches: delegating maintenance to others: effect.

the approach. But the county's liability cannot thus be avoided. The "approach" was, in legal definition, a part of the bridge, and the county's duty to maintain it in reasonable repair could not be so delegated or left to others as

to relieve itself from responsibility, should it be negligently constructed or negligently permitted to become out of repair. *Nims v. Boone County*, 66 Iowa 272; *Miller v. Boone County*, 95 Iowa 5; *Eginoire v. Union County*, 112 Iowa 558.

There is proof that the road superintendent of the township had known of the defective condition of the bridge for at least two weeks. Under the statute, it was his duty to

6. BRIDGES: county bridges: dangerous condition: notice.

guard the place or close the bridge to travel and give notice thereof to the board of supervisors. Code Section 1557. He did not perform the first mentioned duty, and whether he notified the board of the need of repairs to the bridge is not shown. But there was proof that the dangerous condition of the way had existed for such time that it became a question of fact for the jury whether, in the exercise of reasonable care upon part of the county supervisors, they ought to have discovered and repaired the defect in time to have prevented plaintiff's injury; and the defendant is without just ground of complaint with reference thereto.

IV. Complaint is made of the court's failure to charge the jury, as requested, that notice to a township officer of the defect would not operate as notice to the county supervisors. While the court did not instruct upon this point in the exact language of the request, it embodied the substance thereof in the charge given on its own motion, and the exception thereto is not well taken.

V. The recovery of $1,050 is said to be clearly excessive. The record will not justify us in interfering with the verdict on this ground. The evidence, to some of which we have

7. TRIAL: verdict: $1,050: excessiveness: personal injury.

already referred, is sufficient to sustain a finding that Mrs. Johnson was seriously injured, and that, at the time of the trial, some nine months thereafter, she was still suffering from the effects, with no certainty of ultimate recovery. She had suffered much pain. The nature of the ailment which she attributes to the injury is of a serious character, and the damages

returned by the jury give no indication of the influence of passion or prejudice in their assessment, and the objection thereto must be overruled.

Other alleged errors are assigned and argued; but in most respects they are ruled by the conclusions we have already announced, and none of them appears to be well taken. The testimony is sufficient to sustain the finding of the jury that defendant was negligent as charged, that Mrs. Johnson was thereby injured without contributory fault on her part, and the verdict is not manifestly excessive. The judgment is therefore—*Affirmed.*

Evans, C. J., Deemer and Preston, JJ., concur.