HUGH PATTERSON et ux., Appellants, v. RAY WUESTENBERG et al.,
Appellees.

No. 47189.

(Reported in 32 N. W. 2d 209)

MAY 4, 1948.

H. W. Hanson, of Des Moines, for appellants.

Herrick, Sloan & Langdon, of Des Moines, and M. C. Herrick, of Indianola, for Ray Wuestenberg, appellee.

Hansen & Wheatcraft, of Des Moines, for J. L. Diss, appellee.

E. C. Newell, of Des Moines, for E. A. Browne, appellee.

SMITH, J.—Neither their pleadings nor their evidence makes entirely clear upon what theory plaintiffs originally sought recovery. Both contract and fraud are indicated but apparently fraud alone is finally urged on appeal. The case involves the affairs of the Policyholders Mutual Casualty Company of which defendants were officers and plaintiff Hugh Patterson an employee. Plaintiffs are husband and wife.

The events date back to September 1941 when plaintiff Hugh Patterson was employed as field superintendent by defendant Browne, the company's secretary and general manager. Browne and defendant Mapes, assistant secretary (named as party defendant but not served herein), were in charge of the company's office in Des Moines. Its home office in West Liberty, Iowa, was in charge of defendants, Wuestenberg, as president, and Diss, as vice-president and treasurer, and one Heath, assistant treasurer.

Construing plaintiffs' claim as best we may in the light of their pleadings and evidence, we conclude count one is based upon an alleged oral contract (in the early part of 1942) with defendant Browne and perhaps defendant Mapes whereby plaintiff agreed to and did make certain contributions to the surplus of the Casualty Company with the understanding that if the items were not approved by the state insurance commissioner they would be returned to plaintiffs.

These contributions consisted of the following items: (1) plaintiffs' $1,000 note and mortgage on certain small acreage

property owned by them at Carlisle, Iowa (2) two small mortgages (which they had acquired by placing a second mortgage on their home in Knoxville, Iowa) known as the Coulter mortgage, $200, and the Richardson mortgage, $400, respectively, and (3) a back salary check of $400.

It is further claimed defendants Wuestenberg and Diss, at West Liberty, while not original parties to the alleged contract knew of it and by participating in its subsequent breach ratified it and are liable therefor.

Plaintiffs also allege that in the negotiations leading up to the making of the contract it was represented to them by Browne that the Casualty Company "had plenty of money but that they needed securities in order to temporarily build up the surplus to a point where they could take over Midland Mutual Insurance Association of Waterloo, Iowa."

Plaintiff Hugh Patterson testifies that in December 1941 Browne gave him a slip of paper which he (Patterson) copied into a notebook which is lost: "I do remember what he said approximately with reference to surplus, and he said it was between 17 and 18,000, and they would increase to 25 to take over the business." He further testifies he showed Diss and Wuestenberg the figures out of his notebook "and they said that was approximately it. It might be a little bit different then, but it was approximately the statement of the last statement of the company."

In a second count plaintiffs allege that "the promises and representations * * * with respect to the matters and things hereinbefore set forth were false", that defendants knew of their falsity and made them with intent to deceive, and that plaintiffs "believed in and relied on" them.

Proof was offered that the surplus of the Casualty Company was in fact $7,655.99 instead of $17,000 or $18,000 on December 31, 1941. Objection to it on behalf of defendants Wuestenberg and Diss was sustained and no error is assigned on the ruling.

The $1,000 note and mortgage, having been rejected by the insurance commissioner, were not returned to plaintiffs but were assigned by the Casualty Company to one Noland and by

him foreclosed. Apparently the company retained the proceeds of the sale to Noland. The other items of property were presumably also retained. No surplus or contribution certificate was issued to plaintiffs. The prayer is for judgment for $1,789.33.

All three answering defendants, at the close of plaintiffs' evidence, moved for directed verdict and the motions were sustained. The motions of defendants Wuestenberg and Diss were sustained "on the theory that any promises or any agreement or any representations made prior to the transactions were those made by Mr. Browne"; that their (Wuestenberg's and Diss') acts, as officers of the corporation, in assigning the $1,000 note and mortgage were official and not individual; and that there was no evidence "they ever agreed that this would be put up to increase this surplus or made any representations about it."

As to defendant Browne, the trial court found the alleged agreement to return the $1,000 mortgage was one on behalf of the corporation and that Browne was not individually liable on it; that there was no evidence as to what was done with the $400 and $200 mortgages; and that as to the allegations of false representation there was no showing that plaintiffs would not have turned over their property even if the size of the surplus had been correctly stated—in other words, the claimed misrepresentation as to size of the surplus was not the inducement to the transaction.

On appeal plaintiffs argue only the claimed fraud, except as to some pleaded affirmative defenses which did not enter into the decision complained of and need not be discussed here. There is no appearance in this court or argument on behalf of defendants Diss and Browne.

█ I. The issue here is therefore limited to the claim of fraud. Whether it consisted in the claimed *misrepresentation of fact* as to the actual size of the Casualty Company's surplus, or in a *false promise* to return the property if not approved by the insurance commissioner is not expressly stated. Of course, in the latter case it would have to be shown the promise was made with no intent to perform and for the purpose of accomplishing fraud. Faust v. Parker, 204 Iowa 297, 304, 213 N. W. 794.

There is no such showing in the record and no assignment of error or citation of authorities in appellants' brief to support that theory. There is no allegation of a conspiracy among the defendants or other showing upon which to predicate a conclusion that the alleged agreement to return the property was false in its inception or pursuant to a plan to defraud. The most that could be found would be breach of contract.

██ ██ II. There *is* evidence however that Browne represented to plaintiff Hugh Patterson the surplus of the Casualty Company was much greater than it really was. If this representation was made and was material it could doubtless under the record be inferred to have been intentionally made with knowledge of its falsity. There is even some testimony that defendants Wuestenberg and Diss, when shown the figures, said they were approximately correct.

But there is an entire failure to prove plaintiffs relied on that misstatement of fact or that they would have acted differently if it had not been made. The subject matter of the representation does not invite or support an inference that plaintiffs considered it important as an inducement. Plaintiff Hugh Patterson was recalled at the close of the evidence to testify he *believed* what was told him. But he does not say, nor could a jury be permitted from the evidence to find, that he was thereby *induced to make the contribution to the company's surplus*. That he could have so testified if it was a fact, see Seymour v. Chicago & Northwestern Ry. Co., 181 Iowa 218, 232, 164 N. W. 352.

In Andrew v. Darrow Tr. & Sav. Bk., 205 Iowa 244, 247, 216 N. W. 551, 552, we said: "Ever present among the foundation stones of an action for 'fraud' is reliance upon the 'representation.'" Cases are there cited but the proposition is too well-established to require extensive citation.

In a North Dakota case it has been pertinently said:

"It was incumbent upon the plaintiff to prove reliance upon the representations made. There is no presumption which obviates the necessity of proving this fact. It was just as necessary to be proved as the fact that the representations were

made." Grabow v. Bergeth, 59 N. D. 214, 234, 229 N. W. 282, 291.

It is true under some circumstances where the materiality of the alleged misrepresentation is apparent courts will permit an inference to be drawn that reliance was placed thereon. But there is no showing here of such materiality. It does not appear that possibility of return of the contribution to plaintiffs under the alleged oral contract bore any relation to the size of the surplus at the time of the contribution. In fact the contract testified to by plaintiff Hugh Patterson reveals nothing of any agreement to return the contribution if approved by the insurance department or to issue any certificate for such contribution. The trial court correctly held there was no showing upon which the jury could find plaintiffs were by the alleged misrepresentation induced, in whole or in part, to make the contribution to surplus of the Casualty Company.

III. What we have said makes it unnecessary to examine the record to determine whether there was sufficient evidence upon which the defendants other than Browne could be said to have been parties to the alleged misrepresentation. Nor is it necessary, in view of the brief of appellants, to inquire into any possible personal liability of any of the defendants for breach of the alleged oral contract.

IV. The brief of appellee Wuestenberg is largely devoted to a criticism of appellants' brief as not complying with our Rules of Civil Procedure. It is urged: A. That assigned errors not argued or presented by brief points should be disregarded; B. That the general assignment of error in sustaining motion for directed verdict is too vague to be considered; and C. That assignment of error based on rulings as to the admissibility of evidence without setting out the ruling complained of is also too vague.

We have observed and acted on the principles embodied in points A and C but have preferred to decide the case on its merits, so far as possible under the record, notwithstanding any shortcomings of the brief under point B. We do not approve of any noncompliance with our Rules however nor do we wish our action here to be construed as a precedent to

be followed in future litigation. Substantial compliance with the Rules is the litigant's only safe course.

We have assumed throughout that judgment was rendered on the directed verdict though the record does not so show. Treating the appeal as being from such judgment, since the point has not been raised, the decision of the trial court is affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, WENNERSTRUM, and MANTZ, JJ., concur.

HAYS, J., takes no part.