WATERLOO SAVINGS BANK, special administrator of estate of Mrs. Helen Prevas, appellee, v. WATERLOO, CEDAR FALLS & NORTHERN RAILROAD, appellant.

No. 48306.

(Reported in 60 N.W.2d 572)

OCTOBER 20, 1953.

Swisher, Cohrt & Swisher, of Waterloo, for appellant.

Clark & Clark and Reed & Beers, all of Waterloo, for appellee.

THOMPSON, J.—This action was originally brought and prosecuted by Mrs. Nick Prevas, also known in the record as Helen Prevas, who will be referred to in this opinion as the plaintiff. After the judgment had been entered in the district court she died, and The Waterloo Savings Bank qualified as administrator of her estate and has now been substituted as plaintiff-appellee here.

On January 19, 1950, about 3:15 p. m., plaintiff was riding as a fare-paying passenger on a city bus owned and operated by the defendant in the city of Waterloo. The only other passenger on the bus was Mrs. Anna Fikejs, an acquaintance of Mrs. Prevas and a "distant" neighbor. The two women sat in the same seat which was the first on the right side facing forward. There was a seat in front of it running parallel with the long axis of the bus. Mrs. Prevas sat next to the aisle. This seat is about four feet from the driver's seat according to Mrs. Fikejs' testimony.

Mrs. Fikejs testified that as the bus left the intersection of Locust and West Mullan Avenues Mrs. Prevas said to the driver: "Please let me off at Allen." The bus was traveling on West Mullan, and Allen Street is the next intersection and so the next stop after Locust. Mrs. Fikejs says Mrs. Prevas spoke to the driver when the bus was about two houses down West

Mullan from the Locust Avenue intersection. Mrs. Prevas, as a witness for herself, gave substantially the same testimony as Mrs. Fikejs on this point. The driver of the bus, Walter Schultz, denied he heard Mrs. Prevas say anything at this time.

As the bus was almost at the Allen Street intersection it had not slowed down and Mrs. Prevas rose from her seat, saying: "I told you I wanted Allen." As she rose she reached for a pole which runs from top to bottom of the bus near and to the right of the driver's seat. The driver then applied the brakes, whether suddenly or not being in dispute; but in any event Mrs. Prevas did not succeed in grasping the pole and fell to the floor of the bus. She was taken to her home, and, after a doctor was called, to a hospital where she remained for seventy-two days. After about two weeks it was discovered she had a fracture of the hip which her physician thinks was due to the fall in the bus. She had been suffering from what the doctor describes as a "heart and lung condition" for some time before her fall. Other facts will be referred to in the various divisions of the opinion which follow, and as they relate to the matters therein discussed. The trial court submitted the case to a jury which returned a verdict for the plaintiff in the sum of $7079.74.

Defendant assigns ten errors relied upon for reversal, but since some of them are related it discusses and argues them in five divisions. We shall follow these divisions, although not in the same order.

I. By motions for directed verdict, for judgment notwithstanding verdict, and by motion for new trial the defendant challenged the sufficiency of the evidence to warrant submission of the case to the jury. Its contention is that the burden was on plaintiff to show her injuries were occasioned by a sudden jerk or stop of the bus which was unusual and unnecessary. That this is a correct statement of the law is unquestioned, and it is so conceded by plaintiff's counsel. Our inquiry is therefore whether the facts shown in evidence, under the "most favorable to plaintiff" rule, were sufficient to generate a jury question.

It is conceded that the defendant as a common carrier of passengers, while not an insurer of their safety, was bound to exercise the utmost care consistent with the operation of its

business. We have said: "The carrier's duty stops just short of insuring the safety of the passenger, and the common expressions of the law on this subject are that the carrier is bound to protect the passenger as far as human care and foresight will go, and that the carrier is liable for slight negligence." Kliebenstein v. Iowa Railway & Light Co., 193 Iowa 892, 895, 188 N.W. 129, 130. And see Fitzgerald v. Des Moines City Railway Co., 201 Iowa 1302, 207 N.W. 602, Arnett v. Illinois Central Railroad Co., 188 Iowa 540, 176 N.W. 322, and Kellow v. Central Iowa Railway Co., 68 Iowa 470, 478, 23 N.W. 740, 27 N.W. 466, 56 Am. Rep. 858.

It is in the light of this rule we must examine the situation here when we consider defendant's claim that there was no actionable negligence shown as a matter of law. It appears by evidence the jury had a right to believe, whether disputed or not, that as the bus left the intersection of West Mullan and Locust, one block away from plaintiff's desired stop at Allen, she told the driver she wished to alight there. She says she thought he acknowledged her request; and although a motion to strike her statement to this effect was made and overruled, no error is predicated on such ruling. Whether this leaves the answer in the record we need not determine for it appears she was sitting within four feet of the driver and it would in any event be for the jury to say whether he heard her. He was quite evidently within ordinary hearing distance. He says he did not hear and that three heaters in the car were operating and making much noise; but there was a jury question engendered.

Even without this we think the question of defendant's negligence was for the jury. The driver admitted he heard plaintiff call "Allen" when he was near, "almost on the intersection." Again he says: "I saw her rise when I applied the brakes. She was rising when I applied the brakes." And at another point in his testimony is this: "The plaintiff was just arising from her seat with right arm extended when I saw her in the rear-vision mirror." The effect of this is that he knew the plaintiff was arising from her seat with arm extended when he applied the brakes. The jury was entitled to find she was reaching for the pole near the driver which he says was two and

one-half feet from her seat. Both Mrs. Fikejs and the plaintiff testified to the "sudden stop" made by the bus, or to the stopping "with a sudden jolt." Mrs. Fikejs also said the driver "slammed on his brakes." This last statement is the subject of one of defendant's assignments of error and will be discussed later; but even without it there is sufficient evidence of the sudden stopping of the bus while plaintiff was, to the knowledge of the driver, in a position which made such action. dangerous to her, to require submission to the jury. It was not required that passengers must use the means of signaling for stops provided by the company; there were no signs saying they must do so and the driver testified he is sometimes advised by voice. But we think the question of the notice given, or if it was given, is not of great importance at this point. When the driver saw Mrs. Prevas in the act of rising from her seat, with her arm outstretched, he was advised she was in a position in which a sudden stop might injure her. The jury might well have found, as it did, that the defendant did not exercise that high degree of care required of it toward its passengers, and that the stop made was unusual and unnecessary. Walters v. Des Moines City Railway Co., 191 Iowa 196, 179 N.W. 865; Patterson v. Omaha & Council Bluffs Railway & Bridge Co., 90 Iowa 247, 57 N.W. 880; Root v. Des Moines City Railway Co., 113 Iowa 675, 83 N.W. 904; Heinze v. Interurban Railway Co., 139 Iowa 189, 117 N.W. 385, 21 L. R. A., N. S., 715; McMurray v. Twin City Motor Bus Co., 178 Minn. 561, 228 N.W. 154; Cassels v. City of Seattle, 195 Wash. 433, 81 P.2d 275.

Wheeler v. Des Moines City Railway Co., 205 Iowa 439, 215 N.W. 950, 55 A. L. R. 473, and other cases cited and relied upon by defendant are distinguishable on their facts.

II. We set out herewith the court's Instructions Nos. 1 and 3:

"No. 1. In order for the plaintiff to be entitled to a recovery against the defendant in this case the burden of proof is upon the plaintiff to prove by a preponderance of the credible evidence each and every one of the following propositions:

"1. That the plaintiff was injured and damaged substantially as alleged in her petition.

"2. That the defendant was guilty of negligence as charged by the plaintiff, and which alleged negligence on the part of the defendant will hereinafter be stated to you by the court in Instruction No. 3.

"3. That such negligence was the proximate cause of plaintiff's injuries and damages.

"4. The extent of plaintiff's injuries and damage, and the amount thereof.

"If the plaintiff has proved each and every one of said propositions by a preponderance of the credible evidence in this case then she is entitled to a recovery against the defendant; but if the plaintiff has failed to so prove any one or more of said propositions then she is not entitled to any recovery herein, and your verdict will be for the defendant."

"No. 3. Referring to proposition No. 3 in Instruction No. 1, you are now instructed by the court that the only charges of negligence made by the plaintiff against the defendant submitted to you for determination are as follows:

"1. In carelessly and negligently stopping the said bus in such a way as to endanger the said plaintiff.

"2. In failing to stop said bus at the proper place and in the proper manner.

"You are instructed that it is immaterial in this case whether the defendant was negligent in any other respect than as so stated and charged by the plaintiff, and the defendant is not to be held liable to the plaintiff for any other negligence on the part of the defendant, if such existed, because the only charges of negligence on the part of the defendant made by the plaintiff and submitted to you by the court for determination are the charges above set forth.

"You are to bear in mind that the burden of proof is upon the plaintiff to prove by a preponderance of the credible evidence that the defendant was negligent in one or more of the respects charged before the plaintiff is entitled to any recovery herein."

The defendant excepted to Instruction No. 3, first, because it was said to be in conflict with No. 1, and second, because it was alleged to be error to submit the second specification of

negligence in that the place of stopping could not have been the proximate cause of plaintiff's injuries and damage.

It seems the trial court, at the outset of Instruction No. 3, in referring to proposition 3 in Instruction No. 1, really intended to refer to proposition 2. Proposition 2 in Instruction No. 1 dealt with specifications of negligence, while proposition 3 in said instruction referred to proximate cause. But we are not told by defendant in what manner its rights were harmed by this mistake, and we see no prejudice. Instruction No. 3 fully advised the jury they were to consider only the specifications submitted and they should consider no others. There was no real occasion for the court to refer back to Instruction No. 1. The point is very briefly argued by defendant and no authorities are cited to show us wherein prejudice arose.

The second attack on Instruction No. 3 is more serious. The court, by submitting the second specification, told the jury they might find defendant guilty of negligence if they found he "failed to stop said bus at the proper place and in the proper manner." It is the inclusion of the words "proper place" which draws the defendant's fire at this point.

It is defendant's contention that carrying the passenger beyond his destination is not the proximate cause of an accident occurring at another place, and it reasons therefrom that the words "proper place" should not have been included in the instruction. In support of this argument are cited Dresslar v. Citizens' Street-Railroad Co., 19 Ind. App. 383, 47 N.E. 651, McDonald v. City Electric Railway Co., 137 Mich. 392, 100 N.W. 592, and Newport News & Old Point Ry. & Elec. Co. v. McCormick, 106 Va. 517, 56 S.E. 281. It may be conceded that carrying the passenger beyond the proper stopping point, standing alone, would ordinarily not be a proximate cause of an injury. In all three of the cases last-cited there was evidence the passenger was injured while attempting to alight while the car, or train, was still in motion. But we find no pronouncement in any of them that the act of passing the proper stopping place may not, when connected with other facts leading to the injury, be considered as a causal contribution. We have said in Judd v. Rudolph, 207 Iowa 113, 119, 222 N.W. 416, 419, 62 A. L. R.

**1372**

1174: "* * * where several proximate causes contribute to an accident, and each is a sufficient cause, without the operation of which the accident would not have occurred, it may be attributed to all or any of the causes * * *." To the same effect are Pazen v. Des Moines Transportation Co., 223 Iowa 23, 28, 272 N.W. 126, 130, Eclipse Lumber Co. v. Davis, 196 Iowa 1349, 1355, 195 N.W. 337, 340, and Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1074, 181 N.W. 498, 501.

 The true test is whether the negligent act complained of was so connected with the final result and injury, through an unbroken chain of circumstances, as to make a natural whole. Ordinarily the question of proximate cause is for the jury, and this rule is avoided only when there is a break in the chain of events, when some new and independent cause intervenes between the wrongful act and the injury.

So, in the case at bar, we have said there was a jury question as to whether the bus driver heard plaintiff's request to stop at Allen. When it appeared he did not mean to stop there she rose from her seat. He saw her with her right arm extended, apparently reaching for the pole to support herself. As he noticed her in this position there is substantial evidence he brought the bus to a sudden stop. The failure to stop at the "proper place", which under the undisputed evidence was just before entering the intersection of West Mullan and Allen, caused plaintiff to call out to the driver. She rose partially from her seat; the bus was stopped (as the jury might have found) in an "improper manner." The causal connection between the failure to stop at a proper place and the injury to plaintiff seems to us to have been for the jury to determine.

There is another reason why defendant's reasoning at this point is unsound. It argues the question of place of stopping and its relation to plaintiff's injuries as though the instruction dealt with that element alone. But the instruction included in the specification complained of failure to stop the bus "at the proper place *and in the proper manner.*" It thus made it incumbent upon the plaintiff to show both failures before she could recover on this specification. It is evident the trial court was tracing the claimed acts of negligence leading up to the injuries

much as we have done above. In any event, the jury was not permitted to find causal negligence upon the failure to stop at a proper place only. It must also find failure to stop in a proper manner. The defendant does not contend this latter part of the instruction was incorrect, except as it urges there was nothing to submit to the jury in the whole case. No exception was taken to this part of the instruction; so, since we hold there was a jury issue on the entire case the question of failure to stop in a proper manner was properly submitted. Before the jury could find against the defendant because of failure to stop at the proper place, it must also find improper manner of stopping. The two elements were tied together by the instruction, and we think the causal connection was direct and unbroken.

Defendant makes further complaint of Instruction No. 3 because the court did not define what is a "proper place" for stopping. No request was made except as the matter was called to the attention of the court by the exceptions to instructions. But the record included undisputed evidence as to the custom of stopping the buses at the "near" side of the street intersections. There was nothing confusing or contradictory in the record on the question and no occasion for the court to elaborate or to define the obvious.

III. Error is further predicated upon the refusal of the court to strike a part of an answer made by plaintiff's witness Anna Fikejs. The question was this: "Q. As you approached the intersection, what did Mrs. Prevas do, of West Mullan and Allen, if anything?" The answer was: "Shortly before we approached she realized the speed was too great for him to stop, so she begins to leap from her chair and says 'I told you to let me off at Allen!'." The motion was to strike all that part of the answer preceding the first comma.

We need not discuss the question whether there was error in the ruling. There was no question of excessive speed in the case, and it is evident beyond dispute the witness was saying only that Mrs. Prevas realized from the failure to slow down the driver did not intend to make the stop. There is no disagreement on this point. The driver testifies he had not heard Mrs. Prevas tell him she wanted to leave the bus at Allen, and so by

inference that he did not intend to stop there. So the part of the answer which the court refused to strike added nothing to the proof otherwise made. Mrs. Prevas's own testimony shows she attempted to leave her seat when she found the driver did not intend to stop. Whatever the technical niceties the situation required, there was no way in which the defendant could conceivably have been harmed. If there was error, which we do not hold, it was clearly without prejudice.

IV. Another complaint of the defendant is based upon a second refusal of the trial court to strike a part of an answer made by Mrs. Fikejs. We set out the question and answer material at this point. "Q. What did the bus driver do then? A. As she spoke the second time immediately he slammed on the brakes. It was an instant." The motion was to strike all of the answer preceding the first period, as being the opinion and conclusion of the witness.

██ The pertinent rule here is thus stated in 20 Am. Jur., Evidence, section 771, page 643: "The true solution seems to be that such questions are left for the practical discretion of the trial court." In Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 1367, 29 N.W.2d 204, 210, this court said: "The receipt of opinion evidence, lay or expert, rests largely in the trial court's discretion." To the same effect is Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654, and see authorities cited in the latter case. The kind of testimony to which defendant objects here has been described as a "shorthand" rendering of facts. It is, in fact, not really an opinion, but at most a conclusion drawn from facts of common observation. In Brady v. McQuown, 241 Iowa 34, 37, 40 N.W.2d 25, 28, Judge Smith, for the court, had occasion to consider the admissibility of evidence there were "tire marks" or "burn marks" on a highway. He said: "When an object or a condition acquires a commonly used and understood name the name itself constitutes about as good a description as can be used." To the same effect are State v. Japone, 202 Iowa 450, 458, 459, 209 N.W. 468, and Rothrock v. City of Cedar Rapids, 128 Iowa 252, 255, 256, 103 N.W. 475.

These authorities are applicable here. Under the most favorable holding for defendant the matter was in the discretion of the trial court. And again we come to the further conclusion there appears no prejudice to defendant. The point at issue was whether the bus stopped suddenly. Both Mrs. Fikejs and the plaintiff testified affirmatively that it did. One said it came to "a sudden stop"; the other, that it stopped "with a sudden jolt." It is common knowledge that a motor vehicle which stops suddenly, or with a "sudden jolt", when it hits no obstruction, generally does so because of a fast application of the brakes by the driver. The usual phrase is the same Mrs. Fikejs used here: "He slammed on the brakes." There was neither error nor prejudice in the court's ruling.

V. As further ground for reversal defendant urges the verdict of the jury was excessive and due to passion and prejudice. This was the complaint made in its motion for new trial, but in its brief point dealing with this question it says: "The verdict of the jury is excessive and should be reduced." Since plaintiff had medical and hospital bills amounting to $1079.74 it is obvious the jury allowed her $6000 to compensate for her pain and suffering, the only other ground of recovery submitted by the court.

The plaintiff, for a considerable time before the accident, had suffered from a serious heart and lung condition. If a wrongful act aggravates and increases the severity of a condition existing at the time of the injury, recovery may be had only for the increased or augmented suffering proximately caused by the defendant. 25 C. J. S., Damages, section 21, pages 479, 480. Defendant's liability is limited to compensation for injuries caused by its own acts of negligence, and not for injury, suffering, or impaired health due to other causes. Clark v. Sioux County, 178 Iowa 176, 182, 159 N.W. 664. How much of plaintiff's trouble after the accident was due to her previous ill health, how much to her fall in the bus, was for the jury to say.

The facts show plaintiff was in a state of dangerous shock for some time after the accident, and of severe shock perhaps for a week. She suffered a linear fracture of the hip. She was con-

1376

fined to the hospital for seventy-two days. She had bruises on her ribs and complained of considerable pain in her neck. Her heart and lung trouble was aggravated, temporarily at least, by the accident. A chiropractic doctor who treated her after she was released from the hospital testified:

"She was complaining about her neck and she walked about in a humped position. There was sublaxation of the atlas vertebrae. It was disaligned from its normal position, and the sixth and seventh vertebrae which affected nerve pressure resulting in tachycardia and intercostal neuritis and affecting the nerves. I treated her from April 15 to February next."

No doctor was able to say plaintiff suffered permanent injury from the accident.

Both parties cite numerous cases in which we have held the damages were, or were not, excessive. They are of some value for comparison, but this value is limited. The matter of the amount of damages is peculiarly for the jury, and its verdict should not be interfered with unless its wide discretion has clearly been abused. In considering the amount allowed in this case we must keep in mind the depreciation of the United States dollar in the comparatively recent past. It will now buy little, if any, more than fifty per cent of what it would have purchased ten to fifteen years ago. This makes comparison with any but the most recent cases valueless. We take judicial notice of this cheapening of the currency, and we consider the amount allowed by the jury in the light of the lessening buying power of the dollar. Dunham v. Des Moines Railway Co., 240 Iowa 421, 35 N.W.2d 578; Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W.2d 337. We are unable to say there is a sufficient showing here the award made by the jury was unconscionable or so clearly excessive we should interfere.

VI. Errors assigned dealing with the refusal of the court to give certain instructions requested by the defendant are not argued, and so are deemed waived. Rule 344(a)(4)(Third), Rules of Civil Procedure; Tuttle v. Nichols Poultry & Egg Co., 240 Iowa 199, 210, 35 N.W.2d 875; Patterson v. Wuesten-

berg, 239 Iowa 658, 663, 32 N.W.2d 209; State v. Rosenberg, 238 Iowa 621, 630, 27 N.W.2d 904.

We find no error prejudicial to defendant.—Affirmed.

All JUSTICES concur.