CHARLES R. FISHER, appellee, v. DES MOINES TRANSIT
COMPANY, appellant.

No. 50394.

NOVEMBER 14, 1961.

 ██ 

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellant.

Duffield, Pinegar & Spencer, of Des Moines, for appellee.

LARSON, J.—In this appeal from a judgment in favor of the plaintiff, Charles R. Fisher, the defendant, Des Moines Transit Company, assigns as error the trial court's refusal to sustain its motion for judgment notwithstanding the verdict or for a new trial. The issue before us is whether plaintiff, as a matter of law, failed to plead and prove actionable negligence against the defendant when he alleged in Paragraph 3 of his petition that while he was a passenger for hire and "before he reached his seat, the defendant's employee-driver negligently jerked the bus so violently that plaintiff was thrown to the floor and injured and damaged as hereinafter stated"; alleged in Paragraph 4 that said negligence was "a proximate cause of the plaintiff being thrown to the floor of the trolley car"; and introduced the testimony of a lady passenger, a doctor, and himself as to the circumstances involved. We think plaintiff did plead actionable negligence and that the testimony introduced before both parties rested did generate a jury question as to defendant's negligence in operating its bus at that time and place.

The record discloses plaintiff, 86 years of age, boarded defendant's curbliner at the corner of Fourth and Locust Streets

in Des Moines, Iowa, sometime around 2:30 p.m. on March 17, 1960. Several persons preceded him aboard, including the witness Eulah Swartslander, who took a seat in the second row facing the driver on the left-hand side of the bus. A long parallel-to-the-aisle seat separated the row seats from the driver.

Eulah Swartslander testified she observed the plaintiff put his token in the fare box and that as he turned to find a seat the bus started. She said it seemed to roll backward and then started forward with a jerk. To the question, "Was the jerk with enough violence that you could feel it there in your seat?" she said, "Yes, I could." She further testified that the start threw plaintiff off balance, that he went on over, headfirst against the seat across the aisle from her, striking his head against the edge of the seat; that after a couple of men helped him up, he complained to her of his head, and that he was taken off the bus and placed in an ambulance at Third Street.

On cross-examination she said there was snow on the streets, but that the sidewalks were clear; that she did not observe the condition of the street there, but would not say it was slick. Although she noticed the jerk when the bus started, she would not know whether the wheels were turning prior to hitting a dry spot.

The plaintiff testified he was the last of eight or nine persons to board the bus at that stop, and that "the car started moving just as soon as I got my token in." He explained that as he started for a seat the bus moved nice and slow, and then all at once just went "zip". As he raised his foot to take a step his feet went right out from under him and he took a nose dive right under the first seat some ten feet back in the bus. He said, "Just as I raised my foot up, the car took that jump. * * * I went right under the seat." In answer to the question, "What caused your feet to go from under you?" plaintiff said, "The momentum of the car; it was so quick, such a jerk." He testified that after his fall he could not get up until help came, that he was taken to Mercy Hospital for first aid, and then took treatments from Doctor McClean for some six months. His neck still hurts once in a while.

Dr. E. D. McClean testified that he attended plaintiff after

his injury on the bus, that plaintiff was kept in the hospital ten days, with six pounds of traction on his head. His condition was diagnosed as a whiplash injury of the cervical and possibly involving the first dorsal vertebra. The injury resulted in a narrowing of the orifice through which the nerves come out of the spine and caused pressure on the nerves manifested by general pain and tenderness over the affected area extending from about the second cervical down to the first lumbar. At the time of the trial plaintiff had numbness of both thumbs and the first adjacent finger caused by nerve injuries to the median nerve. Rotation of the head on the neck was limited to 80% of normal, dorsal flexion to about 30% of normal, and anterior flexion to about 80% of normal. This testimony concluded plaintiff's case.

Defendant's motion for a directed verdict on the ground that there was no evidence from which the jury could find defendant negligent or that such alleged negligence was the proximate cause of plaintiff's injury was overruled, and it then introduced the testimony of James M. Dew, the employee-operator of its curbliner. His testimony did not injure plaintiff's case.

Mr. Dew testified the fare box on the bus involved was located in front of the driver at his right, that there is a rod to hold onto back of the driver extending from the floor to the ceiling as support for the night curtain, that the first double seats are some 10 feet back from the fare box, that there are no upright rods between the driver and those seats, but there are ceiling rods with grips hanging down for passenger support. He recalled the weather was cold on March 17, 1960, and there was some slush along the curb where the accident occurred. He said he recalled the plaintiff boarding the bus. He testified that after Fisher put his coin in the box, "I started out on one point, that's one point of power that comes as you press down on the pedal, and [he found] there was no traction under the rear wheel on the curbside, or on the right-hand side. It took a little more power to take it out of there, and I added a little more power. And as the bus moved forward, it got onto a stretch of pavement that didn't have any ice on it, apparently, and it gave a slight jerk." On cross-examination he said, "I

testified that the bus, the weight that it is, with dual wheels, stood there on the slushy street and the wheels spun. That is a common occurrence if the street is just a little bit wet, it can spin a wheel without having any slush on the street. *That was happening frequently at that time.*" (Emphasis supplied.) He further testified on cross-examination that he observed the plaintiff walk up the steps as he boarded the bus, noted he was elderly, wore glasses, and had difficulty making the steps, that as there had been frequent occurrences that day when the wheels would spin and a jerk occur when they caught hold, it was on his mind as he started the bus at that time, that it came as no surprise to him when the wheels spun and the bus jumped forward.

To the question, "Now, you made this statement in your testimony, 'I didn't want to throw him [plaintiff] any further than he had already been thrown'" he answered, "Yes, sir."

"Q. How far had he already been thrown? A. That I couldn't say.

"Q. How did you know he had been thrown? A. Because I felt the jerk as well as he did, and then I took it for granted that he had been thrown.

"Q. The jerk then was violent enough to throw one standing, is that correct? A. I don't know how much of a jerk there was. I was seated. There is a difference in feeling of how much jerk there is between seated personnel and the people that are standing.

"Q. You mean it appears much more violent to those standing than those seated? A. Yes, sir.

"Q. And from what you felt of the jerk seated, were you of the opinion that it was violent enough to throw one standing? A. * * * when the bus jerked it wasn't much of a jerk.

"Q. I thought you told me you thought from the way the bus jerked you assumed he was thrown? A. That's right. I am not denying that there was a jerk.

"Q. Was it because of the nature of the jerk that you felt that he had been thrown to the floor? A. That's right."

Defendant called no other witnesses, but when its motion to strike Paragraphs 3 and 4 of plaintiff's petition and its mo-

tion to direct were overruled, objected to the court's statement of the case in its instructions to the jury because it contended no cause of action was alleged against defendant.

I. Under rules 69 and 70, Rules of Civil Procedure in this state, pleadings are the "parties' written statements of their respective claims or defenses" made in clear and concise language which "avoid repetition or prolixity" and simply require that "the facts constituting the cause or causes of action" be asserted along with "the relief demanded, and, if for money, the amount thereof."

As we understand it, defendant contends the facts set forth in Paragraph 3 are not sufficient to state a cause of action. It argues a statement that its "driver negligently jerked the bus so violently that plaintiff was thrown to the floor and injured" was insufficient, but we think the fact that it fully understood plaintiff's claim so stated cannot be reasonably denied. It made no motion for more specific statement (R.C.P. 112) but relies upon the apparent statements in our previous cases that a mere jerk, a mere fall, or even an injury received while one is a passenger on a bus is not itself actionable negligence. It contends that to constitute actionable negligence in such cases there must be an allegation that the jerk was unusual and unnecessary. We cannot agree with appellant. Nor do we find that the allegation of negligence was too general and indefinite. The plaintiff's statement that the driver violently jerked the bus clearly advises the defendant of the basis of the claimed negligence as adequately as if it has said he jerked the bus in an unusual or unreasonable manner. It was sufficient. As bearing on this question, see 1 Iowa Rules of Civil Procedure, Cook, Revised Edition, Pleadings and Motions, pages 450, 451; O'Meara v. Green Constr. Co., 225 Iowa 1365, 282 N.W. 735; and an article by Alan Loth, November 1943, in 29 Iowa Law Review 23–25.

The general rule, of course, is that to determine whether an allegation of negligence is too general and indefinite, each case must be considered in the light of the peculiar facts and circumstances out of which the cause of action arose. Clearly, under the facts set out above, the plaintiff did state a cause of

action against the defendant and the court correctly overruled the motions to strike and the objections to his statement of the case to the jury.

II. We next turn to the peculiar facts and circumstances revealed by the testimony to see if considered in their most favorable light for the plaintiff they tend to establish his claim of actionable negligence. In doing so, it must be conceded that mere jerks, jars and lurches of a trolley car or bus in starting or stopping are by the courts considered among the usual incidents of travel which every passenger must expect and have consistently been held not actionable, even if it has been shown that a passenger was injured by a fall occasioned by such a jerk. However, testimony concerning each such occurrence is relevant. Edwards v. Des Moines Transit Co., 251 Iowa 163, 166, 99 N.W.2d 920, and authorities cited therein. It is also true, as defendant contends, that every injury to a passenger aboard a common carrier does not raise an inference of the operator's negligence. In other words, it must appear that the carrier breached its duty to the injured passenger on such vehicles by an operation which was unusual, unnecessary, dangerous, excessively severe, violent or extraordinary. If the facts disclose such a breach of duty, the negligence may be found actionable. Edwards v. Des Moines Transit Co., supra; Walters v. Des Moines City Ry. Co., 191 Iowa 196, 179 N.W. 865; Wheeler v. Des Moines City Ry. Co., 205 Iowa 439, 215 N.W. 950, 55 A. L. R. 473; Fitch v. Mason City and Clear Lake Traction Co., 124 Iowa 665, 100 N.W. 618; Waterloo Savings Bank v. Waterloo, Cedar Falls & Northern Railroad, 244 Iowa 1364, 60 N.W.2d 572; Fanelli v. Illinois Central R. Co., 246 Iowa 661, 69 N.W.2d 13; Oklahoma Railway Co. v. Jones, 207 Okla. 476, 250 P.2d 472; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501. Thus it is plaintiff's position that he did establish by relevant and satisfactory evidence that defendant breached its duty to him by making an abnormal start, which, because of its violence, caused him to fall and be injured.

III. The duty of a carrier toward its passengers is to exercise care commensurate with the necessity reasonably apparent. Mitchell v. Des Moines City Ry. Co., 161 Iowa 100,

108, 141 N.W. 43. It is a high degree of care which must be exercised by the carrier in foreseeing as well as guarding against danger to its passengers. Fanelli v. Illinois Central R. Co., and Rozmajzl v. Northland Greyhound Lines, both supra; Murray v. Cedar Rapids City Lines, 242 Iowa 794, 48 N.W.2d 256; Waterloo Savings Bank v. Waterloo, C. F. & N. R., supra, 244 Iowa 1364, 1368, 60 N.W.2d 572, and citations. In the later case we reaffirmed the well established rule in Iowa announced in Kliebenstein v. Iowa Railway & Light Co., 193 Iowa 892, 895, 188 N.W. 129, 130, that "The carrier's duty stops just short of insuring the safety of the passenger, and the common expressions of the law on this subject are that the carrier is bound to protect the passenger as far as *human care and foresight* will go, and that the carrier is liable for slight negligence." (Emphasis supplied.) Negligence, being a fault, it is not presumed but must of course be proven by the plaintiff. Did the evidence here tend to establish a fault in the driver of defendant's bus? When the driver saw plaintiff in a dangerous position, should a starting jerk be abnormal, and when he knew or should have known from previous experiences that day that a jerk severe enough to throw plaintiff to the floor might occur when the wheels spun, and yet applied extra power to move off the slick spot, was he negligent? As to this passenger, was his act that of a reasonable and prudent man? Most authorities, under similar circumstances, hold it was not. Gray v. City of Seattle, 29 Wash. 2d 428, 187 P.2d 310. We think the evidence did tend to establish such facts here and that, so established, we cannot say as a matter of law that defendant's duty to plaintiff had not been breached and that he could not recover for his proven injury or damages. Thus we find no error committed by the court in denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

IV. Numerous authorities were cited for us in the excellent briefs by both counsel. Several were cited by both. Many tend to establish propositions not applicable to the case before us, but they do lead us to the oft-stated truth that in cases involving a breach of carrier duty and its liability to a passenger, each case must depend largely upon its own facts. How-

ever, we are satisfied the case at bar is largely controlled by our decision in Waterloo Savings Bank v. Waterloo, C. F. & N. R., supra, 244 Iowa 1364, 60 N.W.2d 572. This was an action for injuries to a passenger on defendant's bus where the plaintiff claimed she was thrown to the floor when the driver made a sudden stop after she told him he was passing her stopping place, and we held under the record that a jury question was raised by a sudden jerk or stop as to whether defendant exercised the high degree of care required of it toward its passengers, and whether the stop made was unusual and unnecessary. Many authorities were cited therein supporting that proposition.

It is true, as defendant contends, that ordinarily a carrier need not cease operations while a passenger is on his feet, and that every slight jerk, usually incurred in the operation of the carrier, will not generate a case of actionable negligence, and that every allegation or statement or conclusion that a start was violent, unusual, unnecessary or dangerously sudden, will not justify submission of a case to the jury, but here clearly plaintiff produced relevant and competent evidence from which the jury could well find a duty to him had been breached by defendant's driver and, through no fault of his own, he was thereby severely injured.

The rulings of the trial court are sustained and the judgment for $6000 in plaintiff's favor must be affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.